PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                              No. 07-4152

KENNETH W. CURRY, II,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Walter D. Kelley, Jr., District Judge.
(2:05-cr-00003-WDK)

Argued: February 1, 2008

Decided: April 28, 2008

Before WILLIAMS, Chief Judge, WILKINSON, Circuit Judge, and
Patrick Michael DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Duffy wrote the opinion, in
which Chief Judge Williams and Judge Wilkinson joined.

## COUNSEL

**ARGUED:** Frances Hemsley Pratt, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Robert
John Krask, OFFICE OF THE UNITED STATES ATTORNEY, Nor-
folk, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff,
Federal Public Defender, Alexandria, Virginia, Larry M. Dash,

OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

DUFFY, District Judge:

Appellant Kenneth W. Curry, II ("Curry" or "Appellant") has appealed as unreasonable a sentence of 36 months imprisonment imposed upon him by the district court for his conviction on charges of mail fraud and wire fraud. Appellant challenges this sentence on the grounds that the district court judge expressed a desire to sentence him to a more lenient sentence, but felt compelled to give him the 36 month sentence by his interpretation of the law and a previous decision of this court. We find no infirmity in the sentence imposed by the district court, and uphold the sentence as imposed.

I.

From August through October 2004, Appellant posted 381 separate auctions on the online auction website eBay for one-ounce "Gold Eagle" gold coins. These coins generally track very closely to the market price for gold, which during that time period ranged from $390 to $420 per ounce. On each of these auction pages, Appellant, operating under the username "kwciicoins," represented that the coins came from an estate auction, were in mint condition, and that he would refund the purchase price of the coins to any buyer who was unsatisfied for any reason. Twenty-one coin buyers from all over the United States won these auctions, at an aggregate total of $147,979.*

In actuality, the evidence indicates that Appellant only possessed forty-four of the gold coins, and was offering for auction coins he did not own. There was no estate, and Appellant was misrepresenting the

*This was the number of auctions, sellers, and amount proven at trial. However, at the sentencing phase, the government produced evidence that twenty-five buyers won 425 auctions at a total price of $165,368.98.

fact that he owned and could sell these coins in order to make money to pay off business and personal debts. When buyers contacted Appellant to check on the status of the coins they had not received, Appellant either did not respond at all, or, if he did, lied to the buyers, telling them that the coins had been shipped or that there had been some sort of mix-up with the shipping.

On September 28, 2005, Appellant sent out an email to all buyers, saying that the coins had not been delivered due to UPS shipping confusion, and offered all buyers the choice of either (a) refunding their money; or (b) substituting a one-ounce Canadian Maple Leaf gold coin and a Silver Eagle coin for each Gold Eagle the buyer had purchased. With the exception of two of the buyers who received forty-four gold coins between them, which was still far short of the quantity for which they had paid, no Gold Eagle or Canadian Maple Leaf gold coins were ever mailed out. Neither were refunds given to any buyers who responded to Appellant's email informing him that they would like their money back, although numerous buyers did so.

On January 11, 2005, Appellant was indicted for mail fraud and wire fraud. At trial, Appellant made numerous misrepresentations about the events leading up to the action, including that all coins auctioned off actually existed and had been in his possession, although there was no evidence of this. He also claimed that he had given refunds to anyone who made a request, although the evidence clearly showed that he had received emails requesting refunds from buyers, none of whom ever received any money back from Appellant.

Curry further claimed that he had taken the coins to the UPS store, which had shipped them, but that he was given no receipt or confirmation because the store was having computer problems that day. The testimony of UPS personnel indicates that Appellant had falsely accused store personnel in the past of losing packages (for which he was never able to provide a tracking number) or switching labels, and that Appellant never filed a claim for any of the packages he claims UPS lost. The jury found Appellant guilty of all counts.

At the sentencing, the trial judge said that he was "surprised" by the verdict, and expressed his belief that Appellant "had every intention of giving the money back." (J.A. 360.) The judge also considered

that Appellant had been willing to turn over significant assets to the court for the purpose of paying restitution to the victims, although he did so only after being arrested and charged. Appellant's offense level was calculated as 22, and the recommended sentence under the Federal Sentencing Guidelines was 41-51 months of imprisonment. Instead, the judge sentenced Appellant to 12 months imprisonment and 12 months of supervised release. In justifying this decision, the judge wrote:

> The evidence introduced at trial suggested that the defendant did not post the auction with intent to defraud. Instead, he ran into financial problems and used the customers' money as something akin to an involuntary, interest free loan. The defendant has sufficient assets to repay all customers in full with interest and has already turned over substantial assets to the court to accomplish this. Given the odd circumstances of this mail/wire fraud conviction, I concluded that the guideline sentence was more severe than necessary.

(J.A. 550.)

The government appealed the sentence to this court as being unreasonably low. On August 28, 2006, this court agreed with the government, and Appellant's initial sentence was vacated and remanded to the district court for further review. *United States v. Curry*, 461 F.3d 452 (4th Cir. 2006). In that opinion, this court first held that the sentencing judge had wrongly given Appellant a sentence reduction based on factors that were in direct opposition to the jury verdict and the weight of the evidence, which he should not have considered in sentencing under 18 U.S.C. § 3553(a). This court went on to hold that the trial court's initial sentence for Appellant was an impermissibly large downward departure from the recommended Guidelines range that was not justified by compelling mitigating circumstances, given that the only remaining valid reason for sentencing Appellant to less than the Guidelines range was his effort at restitution. This court wrote that:

> [W]e have instructed that when the variance is a substantial one—such as the two-thirds reduction from the bottom of the advisory guideline range that is at issue here—we must

more carefully scrutinize the reasoning offered by the district court in support of the sentence. The farther the court diverges from the advisory guidelines range, the more compelling the reasons for the divergence must be.

*Id.* at 460. The court went on to find that the trial court's initial sentence failed this test, writing that "we find that Curry's restitution is by itself insufficient to justify the 70% variance at issue." *Id.* at 461.

On January 12, 2007, the trial court held Appellant's second sentencing hearing. Once again, the court calculated that Appellant had an offense level of 22, and a recommended Guidelines range of 41-51 months. The trial judge noted that:

> I persist in my belief that a 41-month sentence is disproportionate for this, for someone in your situation, who led a spotless life up to this point, who got in a business transaction that got away from you. But I do believe my ability and discretion at this point to be somewhat constrained by what the Fourth Circuit has done.

(J.A. 463.) However, the trial judge still believed that the restitution made by Appellant was worthy of some consideration by the court. As a result, Appellant was sentenced to 36 months imprisonment, below the lower end of the Guidelines recommendation. The court also imposed a term of two years of supervised release. Appellant appealed his sentence to this court.

At the bond hearing on February 22, the trial judge was quite explicit in noting that he believed that Appellant should be receiving less than 36 months imprisonment, and said that were he not "laboring under the Fourth Circuit's constraints I would have done something considerably different." (J.A. 483.) The court noted that there were several appellate cases pending with the Supreme Court as of that date which involved issues of how much discretion judges had to depart from the Guidelines, and to protect against any possibility that Appellant may be imprisoned unnecessarily if his prior sentence was reinstated because of the outcome of any of those cases, the judge granted Appellant bail and instructed him to return on July 15.

## II.

The appropriate standard of review for a court of appeals reviewing a trial court's sentencing decision is for an abuse of discretion. The Supreme Court of the United States recently held:

> We now hold that, while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.

*Gall v. United States*, 128 S. Ct. 586, 591 (2007). The Court also wrote that "[o]ur explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions." *Id.* at 594.

Under *Gall*, our inquiry into whether or not the district court abused its discretion is a two-part inquiry. First, we examine whether the district court committed a "significant procedural error" in imposing the sentence under § 3553. *Id.* at 598. If no procedural error was committed, this court can only vacate a sentence if it was substantively unreasonable in light of all relevant facts. *Id.* at 600.

## III.

As an initial matter, we note that it is simply impractical for appellate courts such as this one to address hypothetical sentences that the sentencing judge did not give, and to attempt to discern why he or she decided not to give such a sentence. Instead, this court must be limited to reviewing the actual sentence imposed by the court, and whether the judge has abused his discretion in giving the sentence. If this were not the case, the floodgates would be opened for every criminal who had been sentenced by a district court judge who had expressed any sort of doubt or hesitation during sentencing to appeal such a sentence as unreasonable. We look, then, only to the issue of whether the district court's sentence of 36 months imprisonment, the

sentence currently before this court, was reasonable considering the reasons given for the departure and all relevant facts of the case.

At the (second) sentencing hearing, the trial court noted that "I do think that the restitution is worthy of some consideration." (J.A. 463.) In handing down Appellant's sentence, the trial court announced to Appellant that it would "sentence you to a term of 36 months, knocking off five months or approximately 13 percent out of consideration for the restitution, and doing away with the fine." (J.A. 464.) In its written statement regarding the sentence, the trial court wrote that:

> Defendant has made full restitution. This is worthy of "some consideration in the sentencing determination . . . ." *United States v. Curry*, 461 F.3d 452, 461 (4th Cir. 2006). I determined that a 5 month downward variance (12%) was the appropriate degree of consideration.

(J.A. 554.)

The Supreme Court has explicitly laid out the steps to be taken by district courts in considering, deciding, and handing down a sentence:

> [T]he Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by the party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall*, 128 S. Ct. at 596-97 (citations omitted).

In the sentencing at issue here, neither side disputes that the sentencing judge followed these steps. The trial court started by making an initial computation of the recommended sentence under the Guidelines, which was 41-51 months of imprisonment. The court then allowed each side to argue for the sentence they considered appropriate. The government argued that Appellant's restitution efforts came only after he had been caught, and since he continued to maintain his innocence and probably knew a court order mandating restitution was coming, the restitution payments did not constitute any sort of acceptance of responsibility. (J.A. 438-39.) Accordingly, the government believed that any downward departure from the Guidelines range was inappropriate, and urged the court to sentence Appellant to 41-51 months of imprisonment. Appellant, on the other hand, asserted that his restitution efforts were significant, and the court should consider them in giving him a sentence below the recommended Guidelines range. (J.A. 444.) Because of this, Appellant urged the court to sentence him to 29 months of home confinement. In the end, the trial court rejected Appellant's proposed sentence, saying that "I think I'm just begging to get reversed again if I try that." (J.A. 463.) In the end, the court examined all the facts and decided that the only factor that warranted a departure from the Guidelines under § 3553(a) was Appellant's restitution efforts, which were rewarded with a sentence which was five months less than the minimum recommended Guidelines range.

That the district court judge expressed frustration with the law does not make the law any less binding. The initial sentence of 12 months imprisonment was substantially based on the district court judge's view that Appellant had not intended to defraud the victims. As this court wrote in the previous *Curry* opinion:

> [T]he district court expressed its view that Curry did not at the outset intend to defraud the buyers. The court stated "it was my conclusion from listening to the facts that this didn't start out as a scam, but somehow or another it ended up as one from the standpoint of using people's money that had been given to you for other purposes." The court explained that "in looking at the sentencing factors, I think I need to

consider the case differently . . . than where somebody had come up with a scheme to use [eBay] from the inception to scam a bunch of people out of money . . . ."

*Curry*, 461 F.3d at 460. This court then went on to hold that these statements by the district court were in direct opposition to the jury's findings of fact, and therefore it was impermissible under § 3553(a) for the district court to consider this in sentencing Curry. *Id.* at 460-61. This left Appellant's restitution efforts as the only remaining factor that the district court could use to justify a downward departure. Since this alone was not so strong a factor as to reasonably justify the dramatic downward departure of the initial sentence, this court vacated the sentence and remanded the case to the district court to resentence Appellant.

It is hard for us to see, then, how the district court's actions constitute anything other than a correct sentencing process under the law. As detailed above, the resentencing satisfied all the legal requirements of a valid downward departure under § 3553(a) and *Gall*. The fact that the district court acknowledged that he was constrained by this court's previous *Curry* opinion and that he would likely be reversed if he sentenced Appellant to 29 months of home confinement have no impact on this court's inquiry into whether the actual sentence imposed was reasonable or not.

Finally, while Appellee's assertions regarding Appellant's restitution are not without some validity, in that it is not at all clear to this court that Appellant was doing anything other than trying to improve his position at sentencing by making restitution when he did, that decision is best left to the sentencing court. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Gall*, 128 S. Ct. at 597 (quoting Brief for Federal Public and Community Defenders et al. as Amici Curiae Supporting Petitioner at 16, *Gall v. United States*, 128 S. Ct. 586 (2007)). In this case, based on all the evidence before the court, the district court determined that Appellant's restitution efforts were significant enough to justify a downward departure of five months. Accordingly, the sentencing judge's decision to sen-

tence Appellant to a sentence of five months less imprisonment than the minimum recommended term under the Guidelines (or a two-point reduction in offense level) was not an abuse of discretion, and we hereby uphold the sentence imposed as reasonable.

## IV.

Based on the reasoning above, we affirm the sentence imposed by the district court.

*AFFIRMED*