PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

TOBY FRANKLIN HEATH,

      *Defendant-Appellant.*

No. 07-4715

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Terrence W. Boyle, District Judge.
(4:06-cr-00046-BO)

Argued: December 5, 2008

Decided: March 12, 2009

Before WILLIAMS, Chief Judge, and WILKINSON
and GREGORY, Circuit Judges.

Affirmed by published opinion. Chief Judge Williams wrote
the majority opinion, in which Judge Wilkinson joined. Judge
Gregory wrote a separate dissenting opinion.

## COUNSEL

**ARGUED:** Ronald Cohen, Wilmington, North Carolina, for
Appellant. Anne Margaret Hayes, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appel-

lee. **ON BRIEF:** George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

## OPINION

WILLIAMS, Chief Judge:

### I.

Toby Franklin Heath pleaded guilty to interfering with commerce by robbery, in violation of 18 U.S.C.A. § 1951 (West 2000) ("Count One"), and possessing a firearm after being convicted of a felony in violation of 18 U.S.C.A. § 922(g)(1) (West 2000 & Supp. 2007) ("Count Two"). The district court sentenced him to a 240-month prison term for Count One, approximately double the Guidelines' advisory range of 100-125 months, and a concurrent 120-month prison term for Count Two. On appeal, Heath argues that the district court failed to adequately explain its reasons for making the upward departure in Count One. We placed Heath's case in abeyance pending the Supreme Court's decision in *Gall v. United States*, 128 S. Ct. 586 (2007) and now affirm.

### II.

On January 12, 2005, Heath robbed a convenience store at gunpoint and stole $797. Less than two weeks later, on January 24, Heath stole four shotguns and six rifles from a house where he had previously been employed as a painter. On July 5, 2006, a federal grand jury sitting in the Eastern District of North Carolina returned a seven-count indictment charging Heath with, among other offenses, interfering with commerce by robbery and possessing a firearm after being convicted of a felony. Heath pleaded guilty, pursuant to a written plea agreement, to Counts One and Two.

Prior to Heath's sentencing, a Pre-Sentence Report ("PSR") was prepared that calculated his offense level at twenty-seven. The PSR also detailed Heath's extensive criminal history. Specifically, the report related that Heath had previously committed several felonies and misdemeanors, as well as numerous violent infractions while he was in prison. The first felony conviction was for assault with a deadly weapon that inflicted serious injury, stemming from Heath stabbing another man in the chest with a knife. The second set of felony convictions arose from Heath's shooting of a police officer three times in the back and shoulders.

The PSR further noted that Heath accrued thirty-one infractions while in prison. Several of these infractions were violent: assaulting staff with a weapon, assaulting another person with a weapon, threatening by fire, assaulting staff by throwing liquids, starting a non-threatening fire, provoking an assault, two incidents of fighting, and four incidents of making verbal threats. Other non-violent infractions included seven incidents of possessing illegal substances; two counts of committing sexual acts; using profane language; five incidents of disobeying staff orders; bartering, trading, or lending money; being in an unauthorized area; gambling; and possessing unauthorized funds.

Heath's PSR also listed his misdemeanor convictions for driving while impaired, driving on the wrong side of the highway, larceny of livestock, second degree trespass, larceny of property, two counts of injury to a public building and facilities, injury to wire and fixtures of the telephone company, and simple assault. Finally, Heath's PSR detailed a parole violation. These past acts resulted in eight criminal history points and a criminal history category of IV. Given this criminal history calculation and an offense level of twenty-seven, the PSR calculated Heath's advisory Guidelines range as 100-125 months imprisonment for Count One and 100-120 months imprisonment for Count Two.

At his sentencing hearing, the Government moved for an upward departure pursuant to the United States Sentencing Guidelines § 4A1.3 (2006), arguing that Heath's criminal history was underrepresented by the criminal history category and that Heath had a high likelihood of recidivism. The district court granted the motion and sentenced Heath to a 240-month prison term for Count One and a 120-month term for Count Two, to be served concurrently. The district court also imposed a three-year term of supervised release and ordered Heath to pay $797 in restitution to his victim. Heath timely appealed his sentence for Count One, and we have jurisdiction pursuant to 18 U.S.C.A. § 3742(a) (West 2000) and 28 U.S.C.A. § 1291 (West 2006).

III.

We review sentencing decisions for an abuse of discretion. *United States v. Curry*, 523 F.3d 436, 439 (4th Cir. 2008). Review under the abuse of discretion standard is a two-part inquiry. "First, we examine whether the district court committed a significant procedural error in imposing the sentence under § 3553. If no procedural error was committed, this court can only vacate a sentence if it was substantively unreasonable in light of all relevant facts." *Curry*, 523 F.3d at 439 (internal quotation marks and citations omitted). *Gall* "unequivocally" establishes that "an appellate court *must* defer to the trial court and can reverse a sentence *only* if it is unreasonable, even if the sentence would not have been the choice of the appellate court." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008) (emphasis in original).

We first examine whether the district court committed a significant procedural error. A district court commits a significant procedural error by

> failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, select-

ing a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines.

*Gall*, 128 S. Ct. at 597.

Here, the district court adopted the PSR, which correctly calculated the sentencing guidelines range. The district court also allowed both sides to argue for the sentence that each considered appropriate. The record clearly shows that the court carefully considered the factors set forth in 18 U.S.C.A. § 3553(a)(1)-(6) (West 2000 & Supp. 2008) to determine whether a departure was appropriate and whether Heath's particular circumstances warranted the extent of the departure that the court chose to impose. The district court also considered the range of sentences suggested under the Guidelines for defendants with higher criminal history categories. Finally, the court determined that Heath should be ordered to pay restitution to his victim in an amount equivalent to that which he stole. In sentencing Heath, the district court provided adequate explanations to allow for meaningful appellate review. *Gall*, 128 S. Ct. at 597. As such, we find no evidence that the district court made any procedural error.

Because we find no significant procedural error, the only issue left for us to consider is whether Heath's sentence is substantively unreasonable. *Gall*, 128 S. Ct. at 597. We find that it is not.

When reviewing a sentence for substantive reasonableness, the reviewing court must

> take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the

sentence is outside the Guidelines range, the court may *not* apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.

*Id*. at 596 (emphasis added). Heath admits that he "has the proverbial record as long as your arm and has acted violently, possessed weapons and, in common parlance, has been a bad actor all his life." (Appellant's Br. at 9.) Heath began, at 18, by stabbing a victim in the chest with a knife. Within a year of his release from prison for that offense, Heath was found guilty of committing two counts of larceny. Heath's larceny sentence was suspended in favor of three years' probation time. This suspended sentence was revoked when he shot at a police officer three times, wounding him in the back and shoulders. Heath served twelve years of the twenty-year sentence imposed for shooting the police officer. While in prison, Heath accrued some thirty-one infractions, many of which were for violent behavior.

Against this criminal history backdrop, the district court decided that the § 3553(a) factors, as a whole, justified the extent of the variance from the Guidelines. The district court discussed Heath's criminal history and noted that his recidivism "shows that he should be punished at a level that's consistent with the crimes in this case and that reflects the seriousness of the offense, respect for the law, [and an appropriate level of] punishment for the offense." (J.A. at 64.) The district court also found that the Guideline range failed to adequately address the criminal history detailed above, did not adequately deter others from committing similar crimes, and did not adequately protect the public from other crimes by Heath. In addition, the district court determined that the "need to provide [Heath] with education and vocational training is important." *Id.* at 65. Finally, the district court found that the

"violent [and] predatory" nature of Heath's crime further war-ranted an upward departure. *Id.*

Given these facts and the district court's explanation, we cannot say the district court's upward departure was unrea-sonable. After all, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge hears and sees the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Gall*, 128 S. Ct. at 597. Importantly, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that some-times mitigate, sometimes magnify, the crime and the punish-ment to ensue." *Id.* at 598. Heath's tendency towards recidivism, as evidenced by his behavior in and out of prison over the past twenty years, provides sufficient justification for the district court's sentence.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

GREGORY, Circuit Judge, dissenting:

There is no way to circumvent the fact that Heath, by all accounts, is a perpetual criminal. He has wasted away his life in prison for the numerous illegal acts that he committed each time he was set free. Yet this case requires us to focus on whether Heath's current sentence is reasonable in light of the Supreme Court's decision in *Gall v. United States*, 128 S. Ct. 586 (2007). I believe it is not.

I have already expounded upon my views of *Gall* in *United States v. Evans*, 526 F.3d 155, 167 (4th Cir. 2008) (Gregory, J., concurring). But the facts of this case compel me to reiterate my position that substantive reasonableness must encompass more than the rote recitation of § 3553(a) factors that the Court has condoned in numerous post-*Gall* cases,* and which it continues to condone today.

At Heath's sentencing hearing, the district court had only the following to say in justifying Heath's sentence: First, Heath's recidivism after serving the sentences for his previous crimes "shows that he should be punished at a level that's consistent with the crimes in this case and that reflects the seriousness of the offense." (J.A. 64.) The judge found that the guideline range would not fulfill that purpose and would not deter or protect the public from future crimes. Moreover, imprisonment would presumably provide Heath with educational and vocational training. These justifications correspond to § 3553(a)(2)(A)-(D).

Next, the court concluded that "[t]he nature of the circumstance, being a violent predatory crime, again warrants an upward departure." (J.A. 65.) This roughly corresponds to § 3553(a)(1). The court continued, "[t]he sentencing range established by the guideline is deficient in terms of his criminal history and the severity of it. I think that the role of the victims in paragraph seven and the impact of the sentence on the victims warrants a more serious sentence." (*Id.*) This arguably corresponds with § 3553(a)(4) and (7).

Finally, the district court determined that the guideline range would "fail to satisfy the need for a sentence that is reflective of the purposes of sentencing under section 3553(a) and the seven factors, and that the statutory provision would be appropriate." (J.A. 65.) This is basically a recitation of the

---

*See, e.g.*, *United States v. Black*, 525 F.3d 359 (4th Cir. 2008); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007).

first sentence of § 3553(a) and arguably an application of § 3553(a)(3).

From these statements, the majority has determined that the district court's justification for Heath's sentence is sufficient to satisfy *Gall*. For the sake of argument, I will assume for a moment that the district court satisfied the procedural prong of *Gall*. But can the very same statements from which the district court narrowly divined procedural reasonableness, without more, also be used to bless the sentence substantively? If so, then there is no such thing as substantive reasonableness; there is only procedural reasonableness, or vice versa. Or, perhaps, there is simply "reasonableness," and the Supreme Court carelessly made a distinction without a difference when it said, "the appellate court should . . . consider the substantive reasonableness of the sentence imposed," *Gall*, 128 S. Ct. at 597, and we lower federal courts are not obliged to take them at their word. Absurd as this result may seem, it is the only conclusion that may logically follow from the approach this Court has taken, and continues to take, post-*Gall*.

The majority concludes, "Heath's tendency towards recidivism, as evidenced by his behavior in and out of prison over the past twenty years, provides sufficient justification for the district court's sentence." *See supra* at 7. But if the majority is basing its substantive reasonableness determination on Heath's recidivism, the antecedent question is what makes Heath's recidivism so unusual as to justify an upward departure of 92% to the statutory maximum? Neither the majority nor the district court addressed this question. Providing a laundry list of Heath's crimes is not a assessment of "reasonableness"—a relative, not absolute, term. While we may review the district court's conclusion only for an abuse of discretion, those words cannot be a legal incantation that prevents *meaningful* substantive review of the district court's sentence.

One might argue that the number and seriousness of Heath's crimes relative to those of other criminals justifies a

severe upward departure. Yet, the calculation of Heath's guideline sentence under § 4A1 of the Guidelines Manual already encapsulates his criminal history, including the seriousness of the offenses he committed. Why was that calculation insufficient? Again, this question goes unanswered. The Supreme Court has instructed us that, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall*, 128 S. Ct. at 596. The district court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 597. Moreover, it is "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.*; *see also United States v. Moreland*, 437 F.3d 424, 434 (4th Cir. 2006) ("The farther the court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be."). In this case, however, no "significant justification" was provided for Heath's 92% upward departure to the statutory maximum—undeniably "major"—aside from a recitation of the § 3553(a) factors. But since the Supreme Court itself differentiated between a consideration of the § 3553(a) factors and a significant justification, the former clearly cannot act as a substitute for the latter—we need more.

The district court failed to articulate a sufficient justification for imposing the statutory maximum upon Heath, and my independent review of the record finds it similarly devoid of any such justification. Therefore, I believe Heath's sentence to be both procedurally and substantively unreasonable, respectively. In *Moreland*, after examining the record before it to determine whether a downward departure was substantively reasonable, this Court stated: "If Moreland's circumstances are so compelling as to warrant a two-thirds reduction from the bottom of the advisory guideline range, it is difficult to imagine any meaningful limit on the discretion of the district court." *Moreland*, 437 F.3d at 437. The rigor with which we assessed reasonableness in finding a floor for downward

departures must necessarily be applied in finding a ceiling for upward departures. Therefore, given the record in this case, I must conclude that if Heath's circumstances are so compelling as to warrant a 92% upward departure to the statutory maximum, it is difficult to imagine any meaningful limit on the discretion of the district court.

Admittedly, the Supreme Court has not provided us with further guidance on these undoubtedly important sentencing issues. But a close reading of *Gall* reveals careful distinctions that logic and justice cannot ignore—yet, the majority does so today. With all due respect to my colleagues, I cannot join their opinion. Therefore, I dissent.