PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                        No. 07-4763

TERRY LAYTON,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, Senior District Judge.
(1:06-cr-00432-WLO)

Argued: December 5, 2008

Decided: April 27, 2009

Before TRAXLER and AGEE, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge
for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Smith wrote the opinion, in which Judge Traxler and Judge Agee joined.

## COUNSEL

**ARGUED:** Thomas Norman Cochran, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Michael A. DeFranco, OFFICE OF THE

UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

---

**OPINION**

SMITH, District Judge:

For possession of child pornography, defendant Terry Layton ("Layton") received a sentence of ninety-seven months, the lowest term of imprisonment recommended by the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). Layton argues that the district court improperly applied various sentencing enhancements, including an enhancement for distribution of child pornography, and imposed an unreasonable sentence. For the following reasons, we affirm the district court.

I.

On February 17, 2006, agents from the Federal Bureau of Investigation ("FBI") searched Layton's home computer, after an informant claimed to have seen Layton viewing child pornography on the computer. Layton voluntarily gave an interview to the FBI agents, which was later documented in an official report. During the interview, Layton admitted that he had downloaded about ten to fifteen images of child pornography from the peer-to-peer file-sharing program WinMX. Using the same program, Layton also had created a shared folder called "My Music" that allowed others to download his files. The FBI agents reported that Layton admitted burning images of child pornography onto about a dozen compact discs and acknowledged there could be a few thousand images of child pornography on his computer. Layton also wrote a statement, witnessed by the FBI agents, in which he apologized for downloading and viewing child pornography.

A forensic examination of Layton's computer revealed over one thousand images of child pornography, many depicting prepubescent children and some containing sadomasochistic encounters. On October 31, 2006, Layton was indicted for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Layton's presentence report ("PSR") calculated a criminal history category of I and a total offense level of thirty, resulting in an advisory Guidelines range of ninety-seven to one hundred twenty months imprisonment, the latter figure being capped at the statutory maximum. Before the sentencing hearing, Layton objected to various sentencing enhancements in the PSR. Layton conceded that all of the child pornography images were found on his computer, but asserted that he was not responsible for all of them being there.

On July 18, 2007, the district court held a sentencing hearing. The district judge received two psychological evaluations of Layton, the PSR, and the report of Layton's interview with the FBI agents. Moreover, the district judge heard testimony from Layton; his brother, Wayne Layton; and his friend, Jamie Griffin. All three claimed to have witnessed Jamie Cook, the FBI's informant, looking at child pornography on Layton's computer. Wayne Layton and Jamie Griffin also testified that they personally saw Layton viewing child pornography on Layton's computer. Indeed, Layton testified—just as he had told the FBI agents—that he downloaded about ten to fifteen images of child pornography, but he claimed to have accidentally downloaded these images. Although testifying that he knew how to download and upload files from the internet, Layton denied knowing how to download from file-sharing programs. Layton claimed he never told the FBI agents that he burned child pornography onto compact discs, and he denied admitting that there could be a few thousand images of child pornography on his computer. According to Layton, Jamie Cook was responsible for all the child pornography downloads and compact discs—a fact that Layton

claims to have told the FBI agents, although it was not included in their report of the interview.

After hearing all testimony and receiving all exhibits, the district judge accepted his "obligation of determining what to do about the credibility in this case." (J.A. 186.)[1] The district judge found that Layton did tell the FBI agents that he burned child pornography onto compact discs and that there could be a few thousand images of child pornography on his computer. After considering all the evidence and making factual findings, the district court overruled Layton's objections to the sentencing enhancements.

Next, the district judge stated that he was "not bound to follow the recommendation of the Sentencing Guidelines," recognizing that the district court was "unfettered, so long as it finds reasonable and appropriate factors to remove someone from Guidelines, if that should become appropriate under the circumstances." (J.A. 203-04.) The district judge specifically discussed the factors under 18 U.S.C. § 3553(a), as they applied to Layton. Finally, the district judge recognized his duty to impose a sentence "which is necessary, but not more than that which the Court finds is necessary[.]" (J.A. 206.) After weighing these considerations, the court sentenced Layton to ninety-seven months imprisonment. Judgment was entered on July 30, 2007, and Layton timely appealed.

## II.

The Guidelines provide for enhancing a defendant's base offense level in certain circumstances, thus increasing the corresponding advisory sentencing range. For instance, when a defendant possesses child pornography depicting a prepubescent minor or a minor under twelve years old, U.S.S.G. § 2G2.2(b)(2) applies, resulting in a two-level increase. When

---

[1]Citations herein to "(J.A. ___.)" refer to the contents of the Joint Appendix filed by the parties in this appeal.

a defendant possesses child pornography portraying "sadistic or masochistic conduct or other depictions of violence," U.S.S.G. § 2G2.2(b)(4) provides for a four-level increase. When the offense involves six hundred or more images of child pornography, U.S.S.G. § 2G2.2(b)(7)(D) applies, resulting in a five-level increase. Finally, when an offense involves certain distribution of child pornography, U.S.S.G. § 2G2.2(b)(3)(F) provides for a two-level increase.

In determining whether a district court properly applied the advisory Guidelines, including application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *E.g.*, *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008). The district court's credibility determinations receive "great deference." *United States v. Feurtado*, 191 F.3d 420, 424 n.2 (4th Cir. 1999).

### A.

The record shows that the district court properly applied the sentencing enhancements under U.S.S.G. § 2G2.2(b)(2), (4), and (7)(D) for the type and amount of child pornography that Layton possessed. Contrary to Layton's argument that the district judge relied only on specious statements from an informant, the record shows that the court actually relied on Layton's own incriminating statements to the FBI agents. Noting his "main concern is the statements [Layton] gave to the FBI," the district judge found that Layton told the FBI agents that there could be a few thousand images of child pornography on his computer. (J.A. 179.)

We give the district court's credibility determinations "great deference," *Feurtado*, 191 F.3d at 424 n.2, and find no clear error in its factual finding, based on Layton's interview with, and the resulting report of, the FBI agents, that Layton admitted he had a few thousand images of child pornography on his computer. No party contests that some of these images

depicted prepubescent children; children under twelve years old; and sadistic, masochistic, or violent behavior. Thus, we find that the sentencing enhancements for the type and amount of child pornography were properly applied.

B.

Because of the file-sharing program installed on Layton's computer, the district court applied a sentencing enhancement for distribution of child pornography. Under U.S.S.G. § 2G2.2(b)(3)(F), a defendant's offense level is increased by two levels for distribution of child pornography that is not to minors and is not for money or other things of value. The term "distribution" is broadly defined as "any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.2 cmt. n.1.

While this circuit has not addressed whether use of a peer-to-peer file-sharing program qualifies as distribution, other circuits have found that it does. The Seventh Circuit upheld a distribution enhancement where a defendant downloaded child pornography through a file-sharing program, since defendant's choice to "knowingly [make] his child pornography available for others to access and download" fell within the plain meaning of "distribution." *United States v. Carnai*, 492 F.3d 867, 875-76 (7th Cir. 2007). The Seventh Circuit found the passive nature of a file-sharing program "irrelevant." *Id.* at 876.

Similarly, the Eighth Circuit upheld a distribution enhancement for a defendant who downloaded child pornography from a file-sharing program and knew that others could download these files from his computer. *See United States v. Griffin*, 482 F.3d 1008, 1010-12 (8th Cir. 2007). Likewise, the Eleventh Circuit affirmed an enhancement for distributing

child pornography through a file-sharing program. *See United States v. Mathenia*, 409 F.3d 1289, 1290 (11th Cir. 2005).

We concur with the Seventh, Eighth, and Eleventh Circuits and hold that use of a peer-to-peer file-sharing program constitutes "distribution" for the purposes of U.S.S.G. § 2G2.2(b)(3)(F). When knowingly using a file-sharing program that allows others to access child pornography files, a defendant commits an act "related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.2 cmt. n.1.

Based on its factual findings, with which we find no clear error, the district court properly applied the enhancement for distribution of child pornography. Layton told the FBI agents that as a member of WinMX, a file-sharing program, "he created a shared folder called 'My Music' with privileges that allowed other people to download files that he put into the folder." (J.A. 270.) He also wrote a statement, witnessed by the FBI agents, that he downloaded child pornography from WinMX. Giving the district judge's credibility determinations great deference, we find no clear error in the facts found from the record to support a distribution enhancement. Because Layton created and used a shared folder that he knew others could access to download his child pornography files,[2] the district court properly applied a two-level sentencing enhancement for distribution under U.S.S.G. § 2G2.2(b)(3)(F).

### III.

We review the district court's sentence under an abuse of discretion standard. *United States v. Curry*, 523 F.3d 436, 439

---

[2]Even if Layton did not know how to disable the sharing feature of WinMX, his deliberate creation of a shared folder that he knew others could access falls within the broad definition of "distribution." *See* U.S.S.G. § 2G2.2 cmt. n.1 ("'Distribution' means any act . . . related to the transfer of material involving the sexual exploitation of a minor.").

(4th Cir. 2008). Our review involves a two-part inquiry, which first examines any significant procedural error committed by the district court and then considers the substantive reasonableness of the sentence imposed. *Id.* A district court commits a procedural error if it fails to properly calculate the Guidelines, treats the Guidelines as mandatory, fails to consider the statutory factors under 18 U.S.C. § 3553(a), bases a sentence on facts that are clearly erroneous, or fails to adequately explain the sentence imposed. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). If no significant procedural error is committed, we then examine the sentence for substantive reasonableness "in light of all relevant facts." *Curry*, 523 F.3d at 439.

## A.

Layton challenges the sentencing procedures employed by the district court in imposing his sentence, but the record shows that the district court adhered to the necessary procedural requirements. After hearing all evidence and argument, the district judge properly calculated Layton's advisory Guidelines range to be ninety-seven to one hundred twenty months imprisonment. Next, the district judge gave Layton an opportunity to present further evidence or argument on the "appropriate disposition." (J.A. 193.) Layton declined, resting on the evidence already presented. After the district judge asked whether "you wish to make any further comment on the fact that the Sentencing Guidelines is a recommendation to the Court and it is not bound by that, but certainly must consider it, and must also consider 3553," defense counsel offered further argument. (J.A. 194.) The district court also heard from the government and listened to Layton's allocution before imposing sentence.

The district judge stated that, after considering the § 3553(a) factors and the advisory Guidelines range, he would "enter what is called a reasonable sentence." (J.A. 34-35.) Based on this single remark, Layton contends on appeal that

the district court improperly sought to fashion a "reasonable sentence," rather than a sentence "sufficient, but not greater than necessary," to achieve the goals of 18 U.S.C. § 3553(a). The record shows otherwise: the district judge expressly stated that "a sentence should be that which is necessary, but no more than that which the Court finds is necessary, and the Court is well aware of that." (J.A. 206.) To fashion a sentence sufficient, but not greater than necessary, the district court considered the evidence presented, the advisory Guidelines range, and the § 3553(a) factors. Specifically, the district judge addressed the nature and circumstances of the offense, Layton's history and characteristics, the need to protect the public from his further crimes, the seriousness of the offense, promoting respect for the law, and providing just punishment. Thus, the district court selected a sentence that served the § 3553(a) factors and provided a detailed explanation of the appropriate sentence before imposing it. Layton's attempt to characterize the district judge's use of the phrase "reasonable sentence" as a procedural error is misleading, as it isolates the statement and takes it out of context. As such, Layton's contention is without merit.

Nor does any evidence in the record suggest that the district judge presumed an advisory Guidelines sentence to be reasonable. *See Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.") (emphasis in original); *see also Spears v. United States*, 129 S. Ct. 840 (2009) (explaining that the Sentencing Guidelines cannot be used as a substitute for a court's independent determination of a just sentence based upon consideration of the statutory sentencing factors). Indeed, after noting "the Court is not bound to follow the recommendation of the Sentencing Guidelines," the district judge asserted that the court was "unfettered, so long as it finds reasonable and appropriate factors to remove someone from Guidelines, if that should become appropriate under the circumstances." (J.A. 203-04.) The district judge explained that while he "does not always agree

with the Guidelines . . . in this case, I find no particularly per-suasive treatises or argument or comment that would indicate that the ninety-seven or one hundred twenty months range is inappropriate." (J.A. 204.) To the extent that the district judge found the Guidelines range to be appropriate, he arrived at that conclusion independently, rather than by relying on a pre-sumption.

Layton has not shown any procedural error in his sentenc-ing. The district judge properly determined the advisory Guidelines range, considered and discussed the § 3553(a) fac-tors, and then fashioned an appropriate sentence, based on his independent judgment, imposing a sentence at the bottom of the Guidelines range. As the record illustrates, the district court understood and complied with proper sentencing proce-dures.

### B.

Finally, the sentence imposed by the district court was not substantively unreasonable "in light of all the relevant facts." *Curry*, 523 F.3d at 439. After calculating Layton's advisory Guidelines range, the district court carefully considered the § 3553(a) factors before fashioning a sentence that would be sufficient, but not greater than necessary, to meet the sentenc-ing factors. *See supra* Part III.A. While Layton argues that his history and characteristics could support a lower sentence, the district court fully considered this factor and other § 3553(a) factors, in conjunction with the PSR, Layton's psychological evaluations, arguments from both sides, and Layton's state-ment, before deciding that the lowest sentence recommended by the Guidelines was appropriate in this case. In light of the court's factual findings, in which we find no clear error, we hold that the court imposed a reasonable sentence of ninety-seven months imprisonment.

### IV.

For the above reasons, the judgment of the district court is

*AFFIRMED*.