**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4575**

UNITED STATES OF AMERICA,

          Plaintiff – Appellee,

     v.

ALAN J. CLIFTON,

          Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore. Richard D. Bennett, District Judge.
(1:12-cr-00389-RDB-1)

Submitted:  September 10, 2014      Decided:  October 15, 2014

Before KING, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

James Wyda, Federal Public Defender, Baltimore, Maryland, Sapna
Mirchandani, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant.   Rod J.
Rosenstein, United States Attorney, Judson T. Mihok, Assistant
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Alan J. Clifton was convicted in early 2013 by a jury in the District of Maryland of three offenses involving child pornography, in contravention of separate subsections of 18 U.S.C. § 2252(a). On appeal, Clifton challenges only the sufficiency of the evidence relating to the mens rea element of one of those three offenses, that is, whether he "knowingly" transported in interstate commerce visual depictions of minors engaged in sexually explicit conduct, in violation of § 2252(a)(1). As explained below, we are satisfied that the proof was sufficient in that regard, and we therefore affirm.

I.

A.

Clifton's prosecution arose from an undercover police investigation into the online sexual exploitation of minors. On October 10, 2011, Detective Childs of the Baltimore County Police Department utilized special law enforcement equipment to investigate the trafficking of child pornography on peer-to-peer ("P2P") file-sharing networks, including a network called FrostWire.[1] Detective Childs discovered that one P2P account

_____

[1] The term "peer-to-peer" — or "P2P" — is used to describe "a method via which computers can share files over the Internet." J.A. 162. FrostWire is a P2P program "that an
(Continued)

2

appeared to have eleven files available for download bearing titles consistent with child pornography. In furtherance of her investigation, Childs downloaded the following files from that particular account: (1) "Pedophilia Uncle Undresses and Rapes 12-Year-Old Niece"; (2) "New PTHC Daddy's Girl 12 YO Daddy BJ"; and (3) "Zoo School New PTHC Take Them Home Real Good Teen Sex Adult Porno."[2]

After determining that the downloaded files appeared to involve minors engaged in sexually explicit conduct, the authorities subpoenaed the user information associated with the foregoing account's Internet protocol address. Information derived from that subpoena led police to defendant Clifton's residence in Halethorpe, Maryland. On November 30, 2011, law enforcement officers executed a search warrant on Clifton's home and seized several computers and other electronic items.

Following the raid, Clifton participated in an interview with two police officers regarding Detective Childs's

---

individual can download and install on their computer in order to facilitate the sharing of any type of file." Id. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2] The term "PTHC," as used in online titles on P2P networks, means "preteen hardcore." See J.A. 196, 266. The term "YO," when following a number, stands for "years old." Id. at 266. Thus, for example, "9YO" means "nine years old." Id.

3

investigation. He confessed to downloading online child pornography and estimated that he had saved about 200 images and videos of child pornography on his computer. Clifton further acknowledged downloading the FrostWire software program and confirmed that it had installed several folders on his laptop, including two folders labeled "incomplete" and "saved," respectively. When prompted, Clifton also admitted that FrostWire had installed a "shared" folder in his FrostWire account and acknowledged that he "was always curious" about the shared folder. See J.A. 714-15. Clifton advised the officers that he sometimes checked on the contents of the shared folder, but "it was always empty." Id.

B.

1.

By the operative Indictment of October 17, 2012, the grand jury in the District of Maryland charged Clifton with three child pornography offenses, including: (1) transportation of child pornography, in contravention of 18 U.S.C. § 2252(a)(1) (Count One);[3] (2) receipt of child pornography, in violation of

---

[3] The statute underlying Clifton's conviction on Count One provides, in pertinent part, as follows:

(a) Any person who —

(Continued)

4

18 U.S.C. § 2252(a)(2) (Count Two); and (3) possession of child pornography, as proscribed by 18 U.S.C. § 2252(a)(4)(B) (Count Three).  During Clifton's jury trial in March 2013, the prosecution thoroughly explored Clifton's use of the FrostWire P2P network to access and share child pornography.  Specifically, the prosecution presented evidence regarding FrostWire's installation process, its default settings, and other settings personally customized by Clifton.

For example, FBI Agent Gordon, the prosecution's expert witness, explained that the "FrostWire Set Up Wizard" prompts users to designate a folder for downloaded files and inquires whether the user wants to share his downloaded files with other

---

> (1) knowingly transports . . . in or affecting interstate . . . commerce by any means including by computer . . . , any visual depiction, if —
>
> > (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > (B) such visual depiction is of such conduct;
> >
> > * * *
>
> shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(1).  Pursuant to § 2252(b), a violation of subsection (a)(1) subjects a defendant to a prison sentence of five to twenty years.

FrostWire users. Thereafter, FrostWire provides notifications indicating whether the user is sharing files at twenty to thirty locations.[4] If the user desires to terminate or limit file sharing, FrostWire offers multiple options.

According to Agent Gordon, Clifton modified several default settings to meet his preferences, including creating a FrostWire nickname for online chats with other FrostWire users, and disabling FrostWire's automatic startup feature.[5] The government also showed that Clifton created personal folders within FrostWire to save his child pornography. Notably, Clifton knew enough about FrostWire to disable the sharing feature on certain file extensions associated with images and videos, including images and videos of child pornography. Those files were then

---

[4] The prosecution introduced evidence that the version of FrostWire Clifton had utilized displayed five near-constant notices that Clifton was sharing files with other FrostWire users, including: (1) a "My Shared Files" tab; (2) a notice specifying, "You are sharing [#] files. You can control which files FrostWire shares"; (3) an oval with a number inside that changes colors when files are shared; (4) a green arrow accompanied by a number that corresponds to the number of files being uploaded from that user by others on FrostWire; and (5) underlined text near the bottom of the FrostWire screen that reads, "View My [#] Shared Files." See J.A. 189-90, 216-18, 222-23, 251, 767-83.

[5] The automatic "Run on Startup" feature prompts the FrostWire program to "start as soon as Windows does." See J.A. 227. Disabling that feature, therefore, would require a FrostWire user to manually launch the program after logging onto his computer.

placed in a separate directory named "Extensions List Unshared." Despite that attempt to limit file sharing, however, on October 10, 2011, Detective Childs successfully downloaded child pornographic videos from Clifton's account.[6]

The prosecution's evidence highlighted inconsistencies between Clifton's statements during his initial interview and those made at trial. For example, Clifton initially told police that he did not know the meaning of certain terms appearing in the titles of child pornographic images and videos, including the term "PTHC." At trial, however, he conceded that he searched for the term "PTHC" in an effort to download pornography and knew that the search would result in child pornography. Next, on at least two occasions, Clifton denied knowing that FrostWire was a file-sharing program. He later acknowledged during his trial testimony that he could have read a disclaimer providing that FrostWire did, in fact, share its users' files. Finally, Clifton originally estimated that his pornography collection contained more adult pornography than child pornography. The prosecution's forensic evidence,

_____

[6] Agent Gordon explained two alternatives on how Detective Childs was able to download files that were in Clifton's Extensions List Unshared directory: (1) that "the file extensions were not in this Extensions List [Unshared]" at the time of the download, or (2) that the file automatically fell into a shared folder by default. See J.A. 226.

however, established that Clifton only had thirty adult pornographic files on his computer, compared to approximately 3,670 child pornographic files.

In defending himself, Clifton testified on his own behalf and denied that he had intentionally transported any child pornographic videos to other FrostWire users. Clifton casually admitted that it was "possible" other FrostWire users could download his files, but he professed a belief that he had to upload files to make them available for that type of sharing. See J.A. 492-93, 511.[7] Nonetheless, Clifton confirmed that he had customized FrostWire's settings to limit the number of his files available for downloading as a "precautionary measure" to prevent online hacking. Id. at 494. Under cross-examination, Clifton admitted that he spent nearly 700 hours on FrostWire over the course of a year.

2.

At the close of the government's evidence, Clifton moved under Rule 29 of the Federal Rules of Criminal Procedure for judgment of acquittal on Count One, maintaining that there was a lack of evidence that he knowingly intended to transport child pornography on the P2P network. The trial court denied the

---

[7] Clifton denied uploading child pornography onto his FrostWire account, and the prosecution did not present any contrary evidence.

8

motion, explaining that there was "sufficient evidence to proceed," viewing the evidence in the light most favorable to the prosecution. See J.A. 452-53. At the close of all the evidence, Clifton renewed his request for a judgment of acquittal on Count One, which the court also denied. Id. at 607.

In instructing the jury on Count One, the district court explained that the prosecution was obliged to prove four elements beyond a reasonable doubt.[8] As to the first element, that Clifton had knowingly transported a visual depiction, the court provided the jury the following explanation:

> In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. If you find beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth, then this element may be satisfied.
>
> However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish, or mistaken.
>
> If you find that the defendant was aware of a high probability and that the defendant acted with deliberate disregard of the facts, you may find that

---

[8] The parties agreed that the prosecution proved the second, third, and fourth elements of Count One, i.e., that the visual depiction was in or affecting commerce, that it involved and portrayed a minor engaging in sexually explicit conduct, and that Clifton knew that a minor was involved and so portrayed. Thus, the jury was instructed to focus only on whether Clifton "knowingly" transported child pornography.

9

the defendant acted knowingly. It is entirely up to you to decide whether . . . you find that the defendant deliberately closed his eyes and any inference to be drawn from the evidence on this issue.

J.A. 660-61. Clifton opposed the court's "ostrich" instruction, contending that the evidence did not show that he "wilfully ignored or turned a blind eye to any facts." Id. at 557-58.[9] The court overruled that objection.

The jury found Clifton guilty on all three offenses in the indictment, including the Count One charge that Clifton had knowingly transported child pornography.[10] The district court thereafter sentenced Clifton to eighty-four months in prison for each of the three offenses, with each sentence set to run concurrently with the next. Clifton timely noticed this appeal, seeking vacatur of his Count One conviction and resentencing on Counts Two and Three. We possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[9] The sort of knowledge defined in an ostrich instruction — "knowledge [that] may be inferred from deliberate avoidance of learning the truth" — is sufficient, if proved, to establish a defendant's knowledge as a matter of law. See United States v. Forbes, 64 F.3d 928, 934 (4th Cir. 1995).

[10] At trial, the district court gave the jury the option of finding Clifton guilty of a lesser-included offense under Count Two — that is, possession, rather than receipt, of child pornography. In his closing argument, Clifton's defense counsel conceded guilt to the lesser-included offense as well as to the Count Three possession offense. The jury found Clifton guilty of the Count Two and Three offenses as charged in the Indictment, and he does not challenge those verdicts on appeal.

10

We review de novo a trial court's denial of a motion for judgment of acquittal. See United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1401 (4th Cir. 1993). When a defendant bases his motion on the insufficiency of the evidence, "the verdict 'must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.'" United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001) (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). We have defined substantial evidence as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). A defendant challenging the sufficiency of the evidence supporting his conviction "must overcome a heavy burden." United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995).

On appeal, Clifton only challenges the sufficiency of the evidence to convict him of Count One — specifically, that he knowingly transported pornographic videos involving minors to other P2P network users. See 18 U.S.C. § 2252(a)(1) (prohibiting "knowing[] transport[ation]" of child pornography). Clifton maintains that the prosecution's evidence does not support his conviction on Count One because "the use of the

11

program [i.e., FrostWire] to obtain child pornography, by itself, is insufficient to prove an intent to share it with others."  Br. of Appellant 30.

We have recognized that the "use of a peer-to-peer file-sharing program constitutes 'distribution'" as defined by the Sentencing Guidelines in the context of child pornography.  See United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009). Thus, "[w]hen knowingly using a file-sharing program that allows others to access child pornography files, a defendant commits an act 'related to the transfer of material involving the sexual exploitation of a minor.'"  Id. (quoting USSG § 2G2.2 cmt. n.1). We are satisfied that the same rationale applies to the felony offense of transportation of child pornography under 18 U.S.C. § 2252(a)(1).

It is undisputed that Detective Childs downloaded child pornography from Clifton's FrostWire account.  Thus, the sole issue presented here is whether a rational jury could have found that Clifton knowingly used a file-sharing program that would allow others to access child pornography from his computer. Notably, Clifton's testimony at trial was inconsistent regarding whether he knew FrostWire was a file-sharing program.[11]  On

---

[11] Clifton's testimony included, for example, the following exchange on cross-examination:

(Continued)

12

appeal, however, Clifton asserts that he "never disputed the fact that he knew FrostWire was a file-sharing program that, by definition, would allow him to openly share his files with others on the FrostWire network." Br. of Appellant 30. And, indeed, the prosecution presented ample evidence to the jury that Clifton knew FrostWire was a file-sharing program.

Our analysis of the evidence sufficiency issue does not end here, however, because the undisputed evidence also establishes that Clifton disabled sharing on certain file extensions, including extensions on child pornographic videos, and Clifton maintains that he periodically checked the contents of his shared folder. We are thus tasked with deciding whether the jury had sufficient evidence to convict Clifton of knowingly transporting child pornography in spite of those acts. We are confident it did.

Importantly, the jury instructions specifically provided that Clifton "knowingly" transported child pornography as a

---

[Prosecutor]: And, of course, FrostWire's known as a file sharing system, isn't that right?

[Clifton]: That was not known to me.

J.A. 518. Clifton later acknowledged, however, that the standard disclaimer during the installation process would have informed him that FrostWire was a file-sharing program "[i]f I read it." Id. at 524-25.

13

matter of law if he had actual knowledge that he was sharing files or if he "deliberately closed his eyes to what would otherwise have been obvious to him." J.A. 660. The prosecution's evidence included proof that Clifton had: (1) downloaded and installed FrostWire, a file-sharing program; (2) spent 700-plus hours on FrostWire; (3) saved approximately 3,670 images and videos of child pornography; (4) configured the FrostWire program so that it did not run on Windows startup; (5) created a FrostWire nickname for chatting; and (6) created new folders for child pornography from his FrostWire downloads. The evidence also demonstrated that FrostWire had: (1) notified Clifton at twenty to thirty locations that he could share his FrostWire files; (2) displayed five near-constant notices that Clifton's files could be shared; and (3) offered multiple options to cease the sharing of files.

Clifton's credibility was for the jury to assess. See United States v. Lentz, 383 F.3d 191, 199 (4th Cir. 2004) ("The jury, not the reviewing court, assesses the credibility of the witnesses and resolves any conflicts in the evidence presented."). A rational jury was entitled to conclude that Clifton had at least ordinary knowledge of FrostWire's file-sharing features, and, as a result, feigned ignorance of FrostWire's numerous notifications that other FrostWire users could and were downloading his files. We must conclude,

14

therefore, that the jury had sufficient evidence to convict Clifton of violating 18 U.S.C. § 2252(a)(1), and the district court did not err in denying his requests for a judgment of acquittal on Count One.

## III.

Pursuant to the foregoing, we affirm the judgment of the district court.

<u>AFFIRMED</u>