## UNITED STATES v. THOMPSON.

(District Court, W. D. Washington, N. D. April 10, 1926.)

No. 10425.

Criminal law ⟨⫘⟩789(9)—Instruction defining "reasonable doubt" held not erroneous.

Instruction that "there is a reasonable doubt of a defendant's guilt, unless from the evidence the jury forms and has an abiding conviction to a moral certainty that he is guilty," and further defining an abiding conviction as "a persistent judgment," and a moral certainty as "a very high degree of probability," and concluding, "If you have an abiding conviction * * * the defendants are guilty as charged, you have no reasonable doubt and will convict them," held not erroneous.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Doubt.]

Clyde Thompson was convicted of conspiracy to violate the National Prohibition Act. On motion for new trial. New trial denied.

C. T. McKinney, Paul D. Coles, and Anthony Savage, Asst. U. S. Attys., all of Seattle, Wash.

Geo. F. Vanderveer and W. G. Beardslee, both of Seattle, Wash., for defendant.

BOURQUIN, District Judge. Of three indicted for conspiracy to violate the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), Keith was dismissed and used as plaintiff's witness, Welch was acquitted, and Thompson was convicted. He moves for a new trial, predicated (1) upon error assigned to the instruction in respect to reasonable doubt; and (2) upon insufficiency of the evidence.

Adverting to the first, the instruction is as follows:

"The presumption of innocence requires you to acquit defendants, unless you find it is overcome by facts and circumstances in evidence which persuade your judgment that they are proven guilty and beyond reasonable doubt. You will remember that there is no such thing as proof to an absolute certainty or beyond any or all doubt. There is no case in which any such proof is possible. Hence, the law never requires it, but only requires that guilt shall be proven beyond *reasonable doubt*.

"The words 'reasonable doubt' are as clear as any others to average men. Nevertheless courts have and do struggle to more clarify them to juries, and in that effort it is laid down as law that there is a reasonable doubt of a defendant's guilt, unless

from the evidence the jury forms and has an abiding conviction to a moral certainty that he is guilty. To further clarify, an abiding conviction is a persistent judgment, and a moral certainty is a very high degree of probability, a degree of probability so high that you can confidently act upon it in the gravest affairs of life. In any case, proof can be made only to some degree of probability; but in criminal cases the proof of guilt must be to that very high degree of probability which inspires a persistent judgment that the defendant is guilty as charged. And of course that very high degree of probability must be based upon the facts and circumstances in the evidence in the case before you, must be based upon reasons found in the evidence, and not at all upon conjecture, speculation, or the doctrine of chances. Accordingly, in this case, if you have an abiding conviction (that is to say, a persistent judgment) that to a moral certainty (that is to say, to a very high degree of probability) the defendants are guilty as charged, you have no reasonable doubt and will convict them."

It is defendant's contention that this instruction departs from Chief Justice Shaw's famous classic, permits resort to the doctrine of chances in said classic condemned, is error prejudicial to him, the accused, and is within the ban of Arine's Case, 10 F.(2d) 778, recently decided by the appellate tribunal of this circuit.

In Webster's Case, 5 Cush. (Mass.) 295, 320, 52 Am. Dec. 711, Chief Justice Shaw stated that the term "reasonable doubt" is "often used, probably pretty well understood, but not easily defined," and, thereupon essaying the task, he delivered himself of the musical phrase that reasonable doubt is absence of "an abiding conviction to a moral certainty of the truth of the charge." At the same time he admitted it was of difficult comprehension, though he addressed it to jurors drawn from within the shades of learned Harvard. Of it, it is not too much to say it is rather a sing-song incantation, which conveys little more meaning than would its original Gothic and Latin to the average juror; and obviously it was in Bishop's mind (Crim. Proc. § 1094) when he wrote that definition of reasonable doubt "will darken more minds of the classes from which our jurors are mainly drawn, than it will enlighten." That therein Bishop well might have included judges, appellate as well as trial, is evidenced by innumerable cases in the books. It follows that, if the classic be accepted, it is necessary that its abstruse

particulars be converted into more simple, common, and comprehensible words, either by the jurors or by the judge for them. And that is done in the instruction herein, by the use of plain synonyms; for an abiding conviction is naught but a persistent judgment, and a moral certainty is none other than a very high degree of probability. All lexicographers so declare, and common usage affirms, any judicial determination to the contrary notwithstanding.

Incidentally, although the term "moral certainty" be a fixture in the law, it involves a contradiction approaching absurdity; for "certainty" imports a truth of fact and proven beyond any doubt or question, while "moral" imports the like proven to only probability. That is to say, taken literally and not in judicial forced construction to sanction its use, the term imports a truth of fact probably proven beyond any doubt or question. In any event, there is nothing in Chief Justice Shaw's instruction, of which the term is a part, to indicate he intended its meaning otherwise than is imported by these synonyms, well-known equivalents then as now.

True, in general expressions he says that to warrant an inference of fact "it is not sufficient that it is probable only; it must be reasonably and morally certain"; that of circumstances "it is not sufficient that they create a probability, though a strong one"; that of guilt, "it is not sufficient to establish a probability, though a strong one, arising from the doctrine of chances, that the fact is more likely to be true than the contrary." But clearly this is not to say that it is not sufficient to derive from the facts and circumstances in evidence a persistent judgment that to a very high degree of probability the accused is guilty as charged.

"Probability only," or "probability, though a strong one, arising from the doctrine of chances," is quite a different thing from "a very high degree of probability arising from the evidence and inspiring a persistent judgment." The latter is what the former is not, viz. the highest degree which evidence can attain, not within the classic's ban, proof beyond reasonable doubt, and the gist of the instruction at bar. By his general expressions, Chief Justice Shaw did not negative all degrees of probability, no more than by like expressions did he affirm the sufficiency of proof by mere weight of evidence. Rather is the contrary, for he limited insufficiency to "probability only," and "though a strong one arising from the doctrine of chances."

To bench and bar it seems unnecessary to

argue that the Chief Justice's classic phrase and the instruction of the instant case are synonyms and equivalents, in substance and principle one and the same. And of course it will be conceded that, though trial judges are constantly admonished to employ set phrases theretofore approved, doubtless to avoid necessity for new mental effort on appeals, there is no error in resort to synonyms and equivalents. It must be remembered that, however desirable it be that the trial judges' language be always familiar on appeal, more desirable is it that it be always as intelligible as it is new to jurors at the trial. To deny this freedom of expression to trial judges, to insist on forms and phrases, rather than substance and principles, is a variety of fundamentalism which dulls the intellect, impedes progress, perpetuates error, cripples the administration of justice, and to a large extent accounts for inefficient enforcement of law against crime.

In substance and principle the instruction in the case at bar has been given by the writer in cases in the thousands. But three instances are remembered wherein counsel took exception. One is McCurry's Case (C. C. A.) 281 F. 532; one is Arine's Case, 10 F.(2d) 778; and one is this at bar. The record, though not the opinion, in the first, discloses the instruction to be a close parallel to that of the last, and it was approved by the appellate tribunal of this circuit.

In Arine's Case only scant fragments of the instructions appear in the record. However, throughout the jury was repeatedly admonished that, to warrant conviction, proof must be beyond reasonable doubt; that the plaintiff must prove defendant guilty, not he his innocence; that only facts and circumstances in evidence are to be considered; and that after you have reviewed all the evidence in the case, "if you have a persistent judgment to a very high degree of probability that the defendant is guilty as charged, you have no reasonable doubt, and you are bound to convict him." Note that the jury was directed to the evidence, and not at all to the doctrine of chances. And is not that the classic's equivalent, and the instruction in McCurry's Case approved? If not, it is matter of regret that Arine's Case does not point out wherein they differ.

So far from doing so, Arine's Case, upon consideration or quotation of a fragment of the fragments in the record, disapproves the instruction and ignores McCurry's Case altogether. Why is not apparent, unless indeed Arine's Case was marked for reversal because of the trial judge's offense to the concepts and ideals of those trained in the Oregon judicial school, and the instruction deemed of minor importance. That offense was failure to heed the admonition to trial judges to emulate "the meek and lowly oyster, * * * to keep the judicial mouth shut, * * * silent" if not dumb (see Edwards v. Co., 130 P. 51, 64 Or. 308), on pain of reversal; and it consisted in an interruption of defendant's counsel by the court of its own motion, in behalf of fair treatment of a witness, of orderly procedure, and of the court's inescapable duty always to secure a righteous trial. An interruption, be it further noted, which interposed no barrier to further inquiry in respect to the merits of the question, and, if devoid of the objectionable features, but which, as too often, was acquiesced in and seized upon in hopes, too often well founded, that it will serve to put the trial judge rather than the accused on trial in the appellate court. Be that as it may, it is believed that the similitude between the instant instruction and that of McCurry's Case, and the difference between them both and that of Arine's Case (more verbal than otherwise), warrant that McCurry's be followed herein.

In respect to the second ground of the motion for a new trial, viz. insufficient evidence, it suffices to say it is not well founded. Although Keith denied participation and Welch was acquitted, the circumstances would warrant the jury's finding of conspiracy between Thompson and Keith from the beginning, or from the time of pursuit of Merwin, or between the latter and Thompson.

As a conspiracy, the case is of small proportions, is of the type for obvious reasons condemned by the last conference of the Chief Justice and Circuit Judges, and better had been brought as an ordinary charge of violation of the Prohibition Act. In principle, a conspiracy to commit a crime is an attempt, and so generally is less than to commit the crime. To employ the strategy of form of the charge is permitted to the prosecution, and, says the Supreme Court in one case, the accused cannot complain that he ought to be tried for the completed offense rather than for the conspiracy to commit it, for the prosecution has the right to charge the *lesser* offense. It is apparent, however, that the choice frequently is made not out of mercy but to increase the punishment; for whereas manufacture and possession, by one man or a score, of intoxicating liquor in any quantity, is but a misdemeanor, and punishable by imprisonment not exceeding six months or by fine not exceeding $1,000 (sec-

tion 29, National Prohibition Act [Comp. St. Ann. Supp. 1923, § 10138½p]), their conspiracy or attempt to manufacture and possess it is a felony, and punishable by imprisonment not exceeding two years, or by fine not exceeding $10,000, or both (section 37, Criminal Code [Comp. St. § 10201]). In this anomalous situation, it is the court's duty to avoid any injustice, so far as may be done in the sentence.

New trial denied.