United States v. Clarke

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: October 3, 2019        Decided: October 29, 2020)

Docket No. 18-1569-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

FERNANDO CLARKE,

*Defendant-Appellant.*

_____

Before:

WALKER, LEVAL, and CARNEY, *Circuit Judges.*

Defendant Fernando Clarke appeals his criminal convictions following a jury trial in the United States District Court for the Eastern District of New York (Spatt, *J.*) on four counts of receipt of child pornography, one count of possession of child pornography, and two counts of transportation of child pornography. The evidence showed that Clarke downloaded child pornography files on a peer-to-peer file sharing network, thus making those files available to be downloaded by other users on the network, and that government agents downloaded two video files from his computer. Clarke was convicted on all counts and sentenced to a 120-month prison term. AFFIRMED.

ALLEGRA GLASHAUSSER, Federal
Defenders of New York, Inc., New York,

NY, *for* Defendant-Appellant Fernando Clarke.

ALLEN L. BODE (Jo Ann M. Navickas, *on the brief*), *for* Seth DuCharme, United States Attorney for the Eastern District of New York, Brooklyn, NY.

LEVAL, *Circuit Judge*:

Defendant Fernando Clarke appeals from a judgment of conviction entered by the United States District Court for the Eastern District of New York (Spatt, *J.*) after a jury trial finding him guilty of several child pornography offenses. The evidence showed that Clarke downloaded child pornography files to his computer, employing BitTorrent, an Internet peer-to-peer file-sharing network, and kept those files in a folder where they were available to be downloaded by other users of the network. Government agents identified Clarke's computer on the network, downloaded child pornography from his computer to theirs, and on that basis obtained a search warrant. The search of his computer revealed thousands of images of child pornography. Clarke was charged with four counts of receipt of child pornography, one count of possession of child pornography, and two counts of transportation of child pornography on the Internet, a means or facility of

interstate commerce. The two counts of transportation were based on two instances in which government agents downloaded a video file from the defendant's computer. After trial, Clarke was convicted of all counts and sentenced to a 120-month prison term.

On appeal, Clarke challenges (1) the evidentiary basis and jury instructions for his conviction on the transportation counts; (2) the district court's denial of discovery of the Government's law enforcement software used to identify him and to download child pornography from his computer; (3) the procedural and substantive reasonableness of his sentence. We affirm his conviction and sentence.

**BACKGROUND**

In 2015, federal agents of the Department of Homeland Security's Homeland Security Investigations ("HSI") unit were investigating child pornography crimes on Long Island. Using a software developed for law enforcement use called "Torrential Downpour," the agents sought to identify people who were sharing particular files known to contain child pornography on the BitTorrent peer-to-peer file sharing network. The investigation revealed hundreds of illicit files that were downloaded using an Internet

3

Protocol ("IP") address that they traced to Fernando Clarke's residence. On that basis, the agents obtained a warrant to search Clarke's home, where, on Clarke's computer, they found thousands of images and videos depicting the sexual exploitation of minors.

Clarke had been downloading child pornography on the Internet since at least 2012, using uTorrent, a program that runs on the BitTorrent peer-to-peer file sharing network. A peer-to-peer network allows a user to download files directly from the computers of other users in the network. In order to facilitate faster downloads, a peer-to-peer program often downloads fragments of the desired file from many different computers on the network. By using such a program to obtain the files of others on the network, a user makes it possible for others to obtain his files. *See* App'x at 54 (Testimony of Richard Branda) (BitTorrent is "a peer-to-peer network where a person's computer is able to share files that are on other people's computer drives and hard drive[s]. And in doing so, you're opening up your computer to be shared from as well."). On uTorrent, as on most BitTorrent programs, any file a user has downloaded to his computer is automatically accessible to others on the network when the user's computer is connected to the Internet. A

user's downloaded files are placed in a folder on his computer where other users of the online network can download and view them.[1]

HSI executed the search warrant at Clarke's home on July 28, 2015 and arrested him that same day. While agents searched the house, Clarke waived his *Miranda* rights and was interviewed by HSI investigator Richard Branda. The interview was not audio or video recorded, but Branda and another HSI agent, Debra Gerbasi, took notes. According to testimony at trial, Clarke admitted that his computer contained child pornography files, including videos and still images involving children between the ages of seven and ten. Clarke and Branda also discussed the functioning of uTorrent. Branda asked

---

[1] For a general description of peer-to-peer networks, *see Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919–20 (2005) (In a peer-to-peer network, "users' computers communicate directly with each other, not through central servers. . . . Because they need no central computer server to mediate the exchange of information or files among users, the high-bandwidth communications capacity for a server may be dispensed with, and the need for costly server storage space is eliminated. Since copies of a file (particularly a popular one) are available on many users' computers, file requests and retrievals may be faster than on other types of networks, and since file exchanges do not travel through a server, communications can take place between any computers that remain connected to the network without risk that a glitch in the server will disable the network in its entirety. Given these benefits in security, cost, and efficiency, peer-to-peer networks are employed to store and distribute electronic files by universities, government agencies, corporations, and libraries, among others.").

Clarke "if he knew that by using that peer-to-peer program, that he was essentially sharing files of child pornography," because "his computer was open to others." App'x at 55, 87. According to Branda, Clarke responded that "he knew that that was the case, but it wasn't his intent and he knew how the peer-to-peer programs work." *Id.* at 55. Clarke also told Branda that he "thought if a file was complete that he downloaded, that it was not sent back out," *id.* at 59, a statement which the Government portrayed to the jury as demonstrating that Clarke knew, at the very least, that he was sharing files while in the process of downloading them.

The Government also introduced circumstantial evidence tending to show that Clarke, when using the uTorrent program, could have seen information on his screen showing him that his files were being downloaded by others. For example, the analysis of Clarke's laptop showed that Clarke could have clicked on an "Info" tab while downloading files and seen how many users were simultaneously receiving the file from him. There is no evidence, however, that Clarke accessed the pages displaying such information about the sharing of his files, nor that uTorrent warned its users

that under the default program settings, the sharing of downloaded files was automatic.

The superseding indictment that was in effect at trial, filed on July 19, 2017, charged Clarke in seven counts, including two counts of "knowingly transport[ing]" child pornography, in violation of 18 U.S.C. § 2252(a)(1) (Counts One and Two); four counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts Three through Six); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Seven). The two counts of transportation of child pornography are based on downloads by government agents of two videos from Clarke's computer in February and April 2015.

Before trial, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Clarke requested production of the Torrential Downpour software used to identify his files. He sought a copy of the computer software program or its source code for testing and evaluation. In support of his discovery motion, Clarke attached a forensic report and affidavit from an expert, Tami Loehrs. Loehrs stated that she had investigated the Toshiba laptop that the HSI agents seized, and found files in a folder on Clarke's external hard drive

7

that she believed was not accessible to the public via the BitTorrent network.

According to Loehrs, without having a copy of the software or its source code, she could not determine whether Torrential Downpour allowed law enforcement to access non-public information on Clarke's computer.

The Government opposed the discovery motion, arguing that the defense expert's claims were premised on a misunderstanding of how Clarke's uTorrent program worked. The Government submitted an affidavit from a detective who had helped develop Torrential Downpour which stated that when a user downloads files on uTorrent, "each and every location [on the computer] where a user downloads file(s) . . . becomes 'publicly shared'," including when files are downloaded to external hard drives. Gov. App'x at 97. The Government also submitted an affidavit from a law enforcement analyst who tested uTorrent and attested that files which he downloaded to an external hard drive were shared with other users. Ruling that Loehrs's expert report was "insufficient to create an issue as to the software's

8

reliability," the district court denied Clarke's discovery request. App'x at 34–35.[2]

The case proceeded to trial and, after both sides rested, Clarke moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing, with respect to the transportation counts, that he "indicated in his postarrest statements that he didn't intend to transport child pornography, that he didn't know he was transporting child pornography, and there was no evidence from which the jury could infer such knowledge." App'x at 423–24. The district court denied the motion. The court also denied the defense's request for a jury instruction that, in order to convict Clarke on the transportation counts, it must find not only that Clarke knew he was transporting visual depictions, but also that he "actively intended" to do so. *Id.* at 434, 440. The district court instructed the jury that it could find Clarke guilty on the transportation counts "if the Government proves that the defendant . . . knowingly allowed others to access his computer equipment to obtain the visual depiction via the internet or file sharing," Gov. App'x at 230,

---

[2] Although the Government did not disclose Torrential Downpour or its source code, it provided Clarke with a forensic report and data logs with details of the government agents' downloads, and provided a demonstration of the software to Clarke and his counsel.

defining "knowingly" as "voluntarily and intentionally and not because of accident, mistake or some other innocent reason." *Id.* at 229–30. "It is not necessary," the district court emphasized, "for the Government to show that the defendant personally transported or shipped the depiction." *Id.* at 230.

The jury returned guilty verdicts on all counts. The court sentenced Clarke to 120 months in prison, followed by five years of supervised release.[3] It also imposed a fine of $13,682.43, representing the costs that the district court incurred when Clarke failed to show up for the first day of trial, along with a $5,000 special assessment required of nonindigent defendants by statute. *See* 18 U.S.C. § 3014. Clarke then brought this appeal.

## DISCUSSION

On appeal, Clarke challenges (1) the sufficiency of the evidence supporting his conviction on the transportation counts, as well as the related

---

[3] Clarke's 120-month sentence consists of (1) two concurrent 60-month terms for the transportation counts pursuant to 18 U.S.C. § 2252(a)(1); (2) four concurrent 60-month terms for the receipt counts pursuant to 18 U.S.C. § 2252(a)(2), which together run consecutively to the sentence on the transportation counts; and (3) a concurrent 36-month term on the possession count pursuant to 18 U.S.C. § 2252(a)(4)(B). Transportation and receipt of child pornography each carry a mandatory minimum sentence of five years, but do not require that the sentences run consecutively. *See* 18 U.S.C. § 2252(b)(1).

jury instructions; (2) the district court's refusal to compel disclosure of the Torrential Downpour software; and (3) the procedural and substantive reasonableness of his sentence.

## I.    The Transportation Counts

Clarke challenges his convictions on Counts One and Two for transporting illicit files in violation of 18 U.S.C. § 2252(a)(1). That section makes it a crime to

> knowingly transport[] . . . using any means or facility of interstate or foreign commerce . . . by any means including by computer or mails, any visual depiction, if . . . the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and . . . such visual depiction is of such conduct.

The two counts correspond to two instances in which government agents, using the Torrential Downpour software, downloaded a video file from Clarke's computer in April 2015 (Count One) and February 2015 (Count Two). In both cases, the agents testified that they downloaded the entirety of the video file from the single IP address that was then traced to Clarke's residence.

Clarke's challenge is on three grounds. In his initial appellate briefs, Clarke raised two challenges. First, he argued that the Government did not

11

adduce sufficient evidence to allow a jury to conclude beyond a reasonable doubt that Clarke knew he was making child pornography files available to other users on BitTorrent. *See* 18 U.S.C. § 2252(a)(1) (prohibiting the "*knowing*[] transport[ation]" of child pornography) (emphasis added). In support of this point, he argued that Agent Branda's testimony about Clarke's acknowledgment of his comprehension of how peer-to-peer networks operate allowed for the possibility that Clarke came to understand the automatic sharing function of uTorrent only *after* Branda explained it to him.

Second, Clarke argued that the district court erred in refusing his request to instruct the jury that, to establish Clarke's guilt for knowingly transporting child pornography, the Government needed to prove that he "actively intended" to transport the files.

Third, following oral argument, the Court directed the parties to submit supplemental briefing on a related question:

> Whether the government agent's action in downloading to a government computer a file, which the defendant had placed in a folder on his computer that was accessible to other users of a peer-to-peer file sharing network, constituted a "transport[ing]" by the defendant within the meaning of 18 U.S.C. § 2252(a)(1)?

*See* Dkt. No. 83. Clarke argued in response that the files were transported from his computer to the government agents' computer only by the agents'

conduct, without participation on his part, and that such transportation of files by government actors does not satisfy the statutory requirement of transportation by the defendant.

For the reasons discussed below, we conclude that sufficient evidence supported the jury's finding of Clarke's knowledge, that the jury instructions were not erroneous, and that, given Clarke's prior actions in downloading child pornography on the BitTorrent file-sharing network and knowingly making those files available to be acquired by others, Clarke cannot escape liability for the transportation of his files merely because the movement of the files was effectuated in part by government actors requesting downloads from his computer to theirs.

*a. Sufficiency of the Evidence of Clarke's Knowledge*

We turn first to whether the Government's evidence was sufficient to show that Clarke knew that, in downloading the files to his computer, he was enabling the sharing of his files with other users. We review challenges to sufficiency of the evidence *de novo*, *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997), drawing all reasonable inferences in favor of the Government, *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011).

13

Clarke does not challenge the sufficiency of the evidence that he downloaded child pornography on the BitTorrent network, nor does he dispute that any files he downloaded would have automatically been made available to be downloaded by other users in the network. What he disputes is whether the evidence was sufficient to establish that he *knew* that his downloading of files to his uTorrent folder enabled other users of BitTorrent to download from his folder, such that the knowledge requirement of § 2252(a)(1) was satisfied.

We conclude that the evidence was sufficient. The evidence showed that Clarke had used the file sharing network for three years to download child pornography. According to Agent Branda's testimony, when he interviewed Clarke, Clarke stated he understood that, by using the network to download child pornography from the computers of other BitTorrent users, he "was essentially sharing files of child pornography," and that he "knew how . . . peer-to-peer programs work." App'x at 55. He added,

14

according to Branda's notes, that he agreed with Branda's statement that "his computer was open to others." App'x at 87.[4]

Clarke counters that the Branda testimony is insufficient evidence of Clarke's knowledge because, especially as presented in Branda's contemporaneous notes, it allows for the possibility that "[Branda] himself may have explained to Mr. Clarke how uTorrent worked before Mr. Clarke said anything about his own understanding of how uTorrent worked." Def.'s Br. at 22 (emphasis in original). Clarke made the same argument to the jury in summation. Clarke is correct that one permissible inference from Branda's testimony is that Clarke came to understand the operation of the program only after the agents explained it to him. But that is not the only permissible inference, and it is one the jury apparently rejected. We must credit inferences

---

[4] These facts are sufficient to distinguish this case from *United States v. Carroll*, 886 F.3d 1347 (11th Cir. 2018), on which Clarke relies. In that case, the Government argued that the defendant "was guilty of knowing distribution simply because he was using a peer-to-peer file sharing program." *Id.* at 1353. The Eleventh Circuit found insufficient record evidence to prove knowledge because "*[n]othing* in the record demonstrate[d] that Carroll . . . was even aware that the contents of his [peer-to-peer software] folder were automatically distributed to the peer-to-peer network." *Id.* (emphasis added). Here, by contrast, the Government presented evidence of Clarke's understanding of how uTorrent worked, evidence which the jury apparently credited.

that the jury could reasonably have drawn in the Government's favor. *United States v. Hassan*, 578 F.3d 108, 126 (2d Cir. 2008). We therefore find legally sufficient evidence that Clarke had knowledge, at the time of his offense, that by downloading the files to his computer through the BitTorrent file-sharing network and maintaining them in a shared folder, he took steps that would result in the movement of the files via the Internet to the computers of others whenever network sharers downloaded them.

*b. Alleged Error in the Jury Instructions*

Clarke next urges that we find error in the district court's jury instructions. The court refused to deliver Clarke's requested jury charge that, to convict on the transportation counts, the jury needed to find that Clarke "*actively* intended to transport the visual depiction." Def.'s Br. at 37 (emphasis added). He argues that an active-intent instruction was necessary in this case because, even if sufficient evidence established Clarke's knowledge of how uTorrent worked, "there was no evidence that he took any active steps to share child pornography, and he told the agents that he did not intend to share it." Def.'s Br. at 33–34.

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Walsh*, 194 F.3d 37, 52 (2d Cir. 1999) (internal quotation marks omitted). We review a district court's refusal to issue a requested jury instruction *de novo. See United States v. Bah*, 574 F.3d 106, 113 (2d Cir. 2009). We will not overturn a conviction by reason of a trial court's failure to give a jury charge requested by the defendant unless the defendant shows both that (1) the charge he requested "accurately represented the law in every respect," and (2) the delivered charge, when viewed as a whole, was erroneous and prejudicial. *United States v. Nektalov*, 461 F.3d 309, 313–14 (2d Cir. 2006) (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004)). Clarke has not carried this burden.

The court's charge accurately represented the law. The court instructed the jury that the Government needed to prove beyond a reasonable doubt that the defendant "knowingly transported a visual depiction in interstate or foreign commerce," and that "transportation . . . includes knowingly making child pornography files available to others via the internet or file sharing." Gov. App'x at 230. The court further defined "knowingly" as "voluntarily

and intentionally and not because of accident, mistake or some other innocent reason." *Id.* at 229–30. *See* Sand et al., 1 Modern Federal Jury Instructions— Criminal ¶ 3A.01 (2019) ("A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness."). The charge thus included a requirement of *intention* to transport and was consistent with the charge requested by the defendant, except for the defendant's addition of the adverb, "*actively*," as a modifier of the word "intended," for which there is no legal basis.

The sole authority on which Clarke based his proposed instruction requiring an "active" intention to transport was a subsequently vacated district court opinion concluding that distribution of child pornography under § 2252(a)(2) requires "an active intention to give or transfer a specific visual depiction to another person and . . . active participation in the actual delivery." *See United States v. C.R.*, 792 F. Supp. 2d 343, 355 (E.D.N.Y. 2011).[5]

---

[5] The issue arose in *C.R.* because the district court questioned whether the defendant's guilty plea should be accepted in view of the fact that, in the district court's opinion, the defendant's failure to allocute to having intended for any specific person to receive the child pornography, coupled with the fact that he had not "actively transmitted the material" to another person, meant that he had not committed the crime. *Id.* at 354. Despite having expressed this view, the court ultimately accepted the guilty plea, and in so

We vacated the decision on other grounds, *see United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013), but held that for the purposes of the sentencing enhancement for distributing child pornography at U.S.S.G. § 2G2.2(b)(3)(F), "knowingly placing child pornography files in a shared folder on a peer-to-peer file-sharing network constitutes distribution." *Id.* at 229 (quoting *United States v. Farney*, 513 F. App'x 114, 116 (2d Cir. 2013) (summary order)). Clarke has pointed to no other authority supporting his formulation, and he has failed to explain his proposed distinction between "active" and "passive" intent. To the extent Clarke's instruction would require more active participation in the transfer itself, numerous courts of appeals have held that knowingly making child pornography available to be downloaded by others constitutes "distribution" under § 2252(a)(2), with no additional requirement of any activity by the defendant to transfer illicit files or to participate actively in their transfer. *See infra* pt. I(c). Clarke has thus failed to carry his burden to show that his requested instruction "accurately represented the law in every respect." *Nektalov*, 461 F.3d at 314 (quoting *Wilkerson*, 361 F.3d at 732).

---

doing, apparently repudiated the court's previously expressed view that "active intention" is required for a conviction under § 2252(a)(2).

*c.  Whether Clarke's Actions Amounted to "Transportation"*

We next consider the related question discussed in the parties' post-argument supplemental briefs: whether Clarke's actions fell short of "transportation" within the meaning of § 2252(a)(1), even assuming that he acted knowingly, understanding that his files were accessible to other users through the BitTorrent network.

Section 2252(a)(1) prohibits "knowingly transport[ing]" child pornography "using any means or facility of interstate or foreign commerce . . . by any means including by computer or mails." 18 U.S.C. § 2252(a)(1). The use of the Internet to move video files from Clarke's computer to the government agents' computer constituted transportation using a means or facility of interstate commerce within the meaning of § 2252(a)(1).[6] Clarke

---

[6] To "transport" means to move something from one place to another. *See Transport*, THE MERRIAM-WEBSTER DICTIONARY, http://merriam-webster.com/dictionary/transport (last visited Aug. 19, 2020) (defining "transport" as "to transfer or convey from one place to another."). Under § 2252, child pornography can be "transport[ed]"—that is, moved from one place to another—electronically via the internet. *See, e.g.*, *United States v. Delmarle*, 99 F.3d 80, 82 (2d Cir. 1996) (defendant who pled guilty to violating § 2252(a)(1) admitted sending images to others via email); *United States v. Tenuto*, 593 F.3d 695, 697 (7th Cir. 2010) (defendant transported child pornography by sending an email with the illicit image attached); *United States v. Napier*, 787 F.3d 333, 345-346 (6th Cir. 2015) (same).

argues that it was not he who transported the files, as it was government agents who caused the migration of the files. He is correct that there is neither evidence (nor allegation) that, at the time of the downloading by the government agents, Clarke took any action or was aware of the government's downloading.

We disagree, however, with the conclusion that he draws from that fact. His argument fails to take into account the role of his own actions and intentions in the transportation of his files to the computers of other users of the file-sharing network. Clarke made use of the BitTorrent peer-to-peer file-sharing network to obtain child pornography files from the computers of others, knowing that by doing so he was enabling other users to obtain the

---

The interstate commerce element of the statute is satisfied by the use of the internet to transmit the files. *See* Gov. App'x at 231 (jury instructions) ("Transmission of photographs or video by means of the internet constitutes transportation in or affecting interstate commerce."); *accord. United States v. Harris*, 548 F. App'x 679, 682 (2d Cir. 2013) (summary order); *United States v. Chiaradio*, 684 F.3d 265, 281 (1st Cir. 2012) ("The government's proof of the jurisdictional element is rock solid: the illicit files traveled via the Internet and, thus, traveled in interstate commerce."); *United States v. MacEwan*, 445 F.3d 237, 243–44 (3d Cir. 2006) (Section 2252's jurisdictional element is satisfied when child pornography is transmitted over the internet, regardless of whether it actually crosses state lines, because the internet is an instrumentality and channel of interstate commerce).

files from his computer. Under the court's instructions, which defined knowingly as "voluntarily and intentionally," the jury found that the government agents' downloads of the files Clarke had placed in his shared folder constituted knowing and intentional transportation of the files by Clarke. We agree that, in those circumstances, by knowingly and intentionally joining the file-sharing network, downloading files from the computers of other network users to his own, storing those files in a folder that was shared with other network users, and maintaining his folder's connection to the network, Clarke himself performed actions that would constitute the crime of knowing transportation of the files when, as anticipated, another user of the file-sharing network caused the files to be downloaded and sent from his computer to the other user's computer. *Cf. Chiaradio*, 684 F.3d at 282 (1st Cir. 2012) ("A rational jury could conclude, as this jury did, that the defendant intentionally made his files available for the taking and that [the undercover agent] simply took him up on his offer.").

No precedents of our court have addressed the precise question before us. We have on one occasion in a brief summary order upheld a defendant's conviction for transporting child pornography when an undercover agent

22

downloaded files from the defendant's file servers. *See United States v. Genao*, 224 F. App'x 39 (2d Cir. 2007) (summary order).[7] Other courts of appeals have upheld transportation convictions under § 2252(a)(1) under similar factual circumstances, but none have explicitly considered the argument made by Clarke in his supplemental briefs.[8]

A number of our sister circuits have rejected similar challenges to prosecutions for *distributing* child pornography under § 2252(a)(2), and have uniformly held that that a defendant who knowingly makes child

---

[7] Genao had argued that it was the Government, rather than he, who transported the files, noting that he was sleeping while the government agent completed the downloads. *See* Br. for the United States, *United States v. Genao*, 2006 WL 4847015, at *27–28. We rejected that argument, finding it immaterial that the defendant "was not physically sitting in front of his computer and directly interacting with the undercover agent who downloaded these files from his server." *Genao*, 224 F. App'x at 40. The *Genao* ruling, however, presented a somewhat different factual scenario from the instant case. In that case, Genao, unlike Clarke, had actively advertised on an internet chat room that he was seeking to exchange child pornography and had created and operated file servers from which others could download child pornography if they uploaded files of their own. Br. for the United States, 2006 WL 4847015, at *2-4, *32.

[8] *See United States v. Stefanidakis*, 678 F.3d 96, 98 (1st Cir. 2012); *United States v. Schade*, 318 F. App'x 91, 94–95 (3d Cir. 2009); *United States v. Clifton*, 587 F. App'x 49, 50 (4th Cir. 2014) (per curiam); *United States v. Keshler*, 769 F. App'x 169, 170 (5th Cir. 2019) (per curiam); *United States v. Nance*, 767 F.3d 1037, 1038 (10th Cir. 2014).

pornography available to be downloaded by others (including undercover law enforcement officers) on a peer-to-peer file sharing network has "distributed" within the meaning of the statute. In one of the first cases to present the issue, *United States v. Shaffer*, 472 F.3d 1219 (10th Cir. 2007), the defendant, like Clarke, downloaded child pornography files on a peer-to-peer network and stored them in a shared folder, from which a government agent downloaded them from Shaffer's computer. *Id.* at 1222. Shaffer argued that there was insufficient evidence to convict him of "distributing" child pornography because he did not "actively transfer possession to another," and was merely a "passive participant" in the agent's downloads. *Id.* at 1223. Writing for the panel, then-Judge Gorsuch rejected that argument, likening Shaffer to the owner of a self-serve gas station:

> The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring" or "dispersing" gasoline.

*Id*. at 1223–24.

Subsequent courts have adopted *Shaffer*'s reasoning to uphold convictions for distributing child pornography on similar facts. *See, e.g.*, *United States v. Budziak*, 697 F.3d 1105, 1109 (9th Cir. 2012) ("[E]vidence is sufficient to support a conviction for distribution under 18 U.S.C. § 2252(a)(2) when it shows that the defendant maintained child pornography in a shared folder, knew that doing so would allow others to download it, and another person actually downloaded it."); *Chiaradio,* 684 F.3d at 282 (when "an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred," even if "the defendant did not actively elect to transmit" the files); *United States v. Richardson*, 713 F.3d 232, 236 (5th Cir. 2013) ("[D]ownloading images and videos containing child pornography from a peer-to-peer computer network and storing them in a shared folder accessible to other users on the network amounts to distribution."); *see also United States v. Collins*, 642 F.3d 654, 656 (8th Cir. 2011); *United States v. Pirosko*, 787 F.3d 358, 368 (6th Cir. 2015); *United States v. Ryan*, 885 F.3d 449, 453 (7th Cir. 2018).[9]

---

[9] Similarly, appellate courts, including ours, have also held that a defendant who knowingly makes child pornography available to be downloaded by other users on a peer-to-peer network is eligible to receive the sentencing

25

We recognize that these distribution precedents are not squarely pertinent to the transportation statute. "Distribution" and "transportation" are different, in a manner that can be significant for Clarke's argument, as distribution can be accomplished by mere transfer of ownership without movement from one place to another. The logic of these cases is nonetheless consistent with our conclusion that when Clarke downloaded child pornography files on a peer-to-peer file-sharing network, knowing that his own downloading of files and storing them in a shared folder enabled others to download those files to their computers, the downloading by other users of the network completed Clarke's commission of the offense of transporting child pornography.

In this case, the jury found beyond a reasonable doubt that Clarke, by using the file-sharing program, "knowingly" allowed others to access his computer to obtain child pornography, s*ee supra* pt. I(a), and therefore

enhancement for "distributing" child pornography under U.S.S.G. § 2G2.2(b)(3)(F). *See*, *e.g.*, *Reingold*, 731 F.3d at 229–30; *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009); *United States v. Conner*, 521 F. App'x 493, 500 (6th Cir. 2013); *United States v. Carani*, 492 F.3d 867, 876 (7th Cir. 2007); *United States v. Glassgow*, 682 F.3d 1107, 1110 (8th Cir. 2012); *United States v. Ramos*, 695 F.3d 1035, 1041 (10th Cir. 2012).

necessarily found under the court's instructions that he did so "intentionally," *see supra* pt. I(b); *see also* Gov. App'x at 230 (defining "knowingly" and "voluntarily and intentionally").[10] By wittingly participating in a file-sharing network and downloading files from the computers of others, Clarke implicitly invited other participants in the file-sharing network to share his files, and enabled them to do so. *See* App'x at 54 (Testimony of Branda) (BitTorrent is "a peer-to-peer network where a person's computer is able to share files that are on other people's computer drives and hard drive[s]. And in doing so, you're opening up your computer to be shared from as well."); *id.* at 87 (Clarke told Branda he "kn[e]w how peer to peer programs work.").

The fact that the movement of the files was effectuated in part by the Government's downloads without Clarke's awareness does not alter our conclusion. Clarke intentionally obtained child pornography through what he knew to be a file-sharing network, in which the transportation of child pornography from his computer to other users was an almost inevitable consequence and indeed the very objective of the network. Under these circumstances, Clarke has "transport[ed]" child pornography within the

---

[10] We do not suggest that, in all cases, "knowingly" and "intentionally" will mean the same thing.

27

meaning of § 2252(a)(1). *Cf. Chiaradio*, 684 F.3d at 282 ("The fact that the defendant did not actively elect to transmit [the child pornography] files is irrelevant" to his conviction for distribution under § 2252(a)(2)); *Shaffer*, 472 F.3d at 1223 (the defendant distributed child pornography in the sense of having "transferred" it to others because even though he did not "actively push[] pornography on [other] users [of the peer-to-peer network], . . . he freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items").

Clarke maintains that there is no evidence that he "intended" to share child pornography, pointing to Agent Branda's testimony that Clarke had stated that it was "not his intention" to share child pornography, but only to obtain it for himself. *See* App'x at 86. This statement confuses motivation with intention. When one makes an agreement to buy a desired object for $100, it is likely not the buyer's motivating objective to rid himself of $100. The motivation is rather to acquire the desired object. Nonetheless, the buyer intends that both aspects of the transaction take place—his acquisition of the object and his payment of the price. Similarly, when one avails oneself of a peer-to-peer file-sharing network to acquire files, knowing that it functions on

the basis of allowing users to access each other's files, one is likely to be motivated only by the acquisition of files from the computers of others. Nonetheless, we have held that "a jury may conclude that an actor intended [the] foreseeable consequences of his actions." *United States v. Nelson*, 277 F.3d 164, 197 (2d Cir. 2002).

The jury apparently found based on sufficient evidence that Clarke availed himself of the BitTorrent network knowing full well that doing so meant that he was allowing other users to download files from his computer. In storing those files on his computer in a folder that allowed other users of the network to download copies to their computers, he went far towards transporting his files to the computers of unknown others, which offense was completed when the files moved from his computer to theirs. The fact that Clarke knew neither who was downloading his files, nor when it was occurring, is irrelevant, as he knew that this was how the network functioned. We are therefore satisfied that, because Clarke knew he was sharing child pornography files on a file-sharing network, he cannot escape liability for the transportation of those files when it occurred. Under these circumstances, we conclude that when the illicit files moved from his computer to the agents'

29

upon their requests to download, that completed Clarke's commission of the transportation offenses charged in Counts One and Two. The evidence was sufficient to prove his guilt.

II.     Discovery of the Torrential Downpour Software

Clarke next argues that it was an abuse of discretion for the district court to deny him production of the Torrential Downpour program and its source code because that software provided the "bulk of the evidence" for his conviction on the transportation counts and also provided the justification for the search warrant that discovered the evidence underlying all the counts. Def.'s Br. at 23, 28. We disagree.

We review "a district court's discovery rulings for abuse of discretion." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014). The Government must "permit the defendant to inspect" any item that is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Evidence is material "if it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). To obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality. *See United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991); *United*

30

*States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense."). We have stated that we will order a new trial on account of the denial of discovery only if there is "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Stevens*, 985 F.2d at 1180 (internal quotation marks omitted).

We recognize that, when a defendant's guilt is predicated on the government offering proof that a government agent downloaded files from the defendant's computer, information about the program by which the downloading was accomplished is likely to be "material to preparing the defense" and therefore subject to disclosure under Fed. R. Crim. P. 16(a)(1)(E)(i), so as to enable the defendant to challenge the government's proof. *See Pirosko*, 787 F.3d at 366 (the Government does not have "a blank check to operate its file-sharing detection software sans scrutiny"); *see also* Rebecca Wexler, *Life, Liberty, and Trade Secrets: Intellectual Property in the*

*Criminal Justice System*, 70 STAN. L. REV. 1343, 1403–07 (2018). Here, the Government did provide Clarke with considerable information about the operation of the program, short of turning over the program itself and its source code. The Government's disclosures included copies of the files downloaded by the agents (as well as forensic images of the corresponding data recovered on Clarke's computer equipment), over 200 pages of data logs detailing the agents' downloads of files from his computer, a "forensic report" of the computer equipment seized from Clarke, and an in-person demonstration of how Torrential Downpour operated. This evidence showed, among other things, that the video files on the agents' computer, purportedly downloaded from the defendant's computer by use of the Torrential Downpour program, exactly matched files later recovered from Clarke's computer equipment. The Government's reason for opposing further disclosure was a substantial one—access to the material withheld would have enabled traffickers in child pornography to avoid detection by altering or avoiding the files that law enforcement was searching for. It would also enable those seeking child pornography to find those files that had been identified by the Government.

Ultimately, we need not decide whether the Government's reasons for withholding disclosure outweighed Clarke's need for it because, even assuming a violation of Clarke's entitlement to discovery, Clarke has not demonstrated that he suffered prejudice as a result. *See Stevens*, 985 F.2d at 1180; *United States v. Sanchez*, 912 F.2d 18, 21 (2d Cir. 1990) (in the event of a Rule 16 violation, "reversal will only be warranted if the nondisclosure results in substantial prejudice to the defendant"). Clarke's argument to the district court for why disclosure of the software and its source code was necessary for his defense (in addition to the other pertinent discovery provided above) was premised on an assumption made by his expert that, because the child pornography files accessed by the government agents were located on Clarke's external hard drive, rather than his computer's hard drive, the files "would not have been publicly available on the BitTorrent network" and therefore that Clarke's computer could not have shared or transported them. Gov. App'x at 38–39 (Affidavit of Tami Loehrs). Accordingly, Clarke argued, access to Torrential Downpour and its source code was necessary for him to show that the government agents could not have downloaded Clarke's child pornography files over the open BitTorrent network.

33

The Government, however, persuasively countered Loehrs's assertions with evidence that the district court was entitled to credit. The Government's evidence showed that, unlike some other peer-to-peer programs, uTorrent prompts the user to choose "a location to save the downloaded files" before initiating a download. Gov. App'x at 97 (Affidavit of Robert Erdely). The "user can specify any location on a computer" or on "an external hard drive." *Id.* Critically, whatever location is specified by the user as the destination for the downloaded files becomes accessible to other users of the network, regardless of whether that folder is on the computer itself or on an external hard drive.[11] Additionally, the Government submitted evidence showing that files downloaded and saved to an external hard drive by a Department of Justice investigative analyst, using the same version of uTorrent used by Clarke, were accessed by other BitTorrent users. This evidence refuted Loehrs's assumption that files saved on external hard drives were not accessible to other users of BitTorrent, and the district court reasonably

---

[11] This description of how uTorrent operates is further supported by expert testimony adduced at trial. *See* App'x at 399 (Trial Testimony of Dero Tucker) (explaining that uTorrent does not have "a specific folder or one single folder to place complete downloads," but rather "allow[s] the user to specify" where to save downloaded files).

34

concluded that Loehrs's speculation was "insufficient to create an issue as to the [Torrential Downpour] software's reliability." App'x at 33.[12] There is thus no indication, given the extensive disclosures that were made to Clarke, that he was in any way prejudiced by the district court's denial of his demand for disclosure of the program itself and its source code. *See Stevens*, 985 F.2d at 1180. If the initial denial was error, Clarke has failed to make any showing that he suffered harm as a result.

---

[12] In reaching this conclusion, we note that the facts of this case differ significantly from those presented in *Budziak*, 697 F.3d at 1105, which Clarke invokes in support of his materiality argument and in which the Ninth Circuit ordered the Government to disclose a similar software program. *Budziak* involved a charge for distribution of child pornography that was premised on files that the Government downloaded from the defendant's computer remotely, using a peer-to-peer investigative tool. *Id.* at 1107. The defendant in *Budziak* presented specific evidence that the investigating officer may have downloaded only fragments of child pornography, and those fragments came only from the defendant's "incomplete" folder, making it "more likely" that the defendant did not transmit any complete child pornography files to agents. *Id.* at 1112. The Ninth Circuit's holding depended on the defendant's "evidence suggesting that the materials disclosed by the FBI did not resolve all questions relevant to his defense." *Id.* at 1112 n.1. Here, by contrast, Clarke pointed only to Loehrs's persuasively refuted speculation about errors in the government software, which was insufficient to require the district court to compel disclosure. *See Pirosko*, 787 F.3d at 366 (defendant's conclusory allegation that he did not know how the investigative peer-to-peer software worked was insufficient to "overcome the numerous facts supporting the government's position that it legitimately obtained child pornography from Pirosko's shared folders.").

35

II.    Challenges to Clarke's Sentence

Clarke argues that both the term of imprisonment imposed and the monetary penalties assessed were unreasonable. When reviewing sentences, we apply "a particularly deferential form of abuse-of-discretion review," and will not vacate a sentence unless it is either procedurally or substantively unreasonable. *See United States v. Cavera*, 550 F.3d 180, 187–89 & n.5 (2d Cir. 2008). A district court errs procedurally when it: (1) "fails to calculate the Guidelines range"; (2) "makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory"; (3) "does not consider the [18 U.S.C.] § 3553(a) factors"; (4) "rests its sentence on a clearly erroneous finding of fact"; (5) "fails adequately to explain its chosen sentence"; or (6) deviates from the Guidelines range it calculated without explanation. *Id.* at 190. A sentence is substantively unreasonable "only . . . where the trial court's decision cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted).

a.    *Term of Imprisonment*

First, Clarke asserts that his sentence was procedurally unreasonable because the district court did not adequately consider that (1) the Sentencing

Guidelines' child pornography enhancements are excessive, and (2) Clarke's conduct was typical of ordinary child pornography cases. This position is inconsistent with the record and the law. The record establishes that the district court correctly calculated the Guidelines range of 210 to 262 months, considered each of the § 3553(a) factors, and explained its sentence, including its conclusion that the Guidelines range was excessive and its decision to depart downward from that range.

Clarke insists that the district court committed procedural error by "fail[ing] to appropriately consider the teaching of" *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010). Def.'s Br. at 41. In that case, we criticized the child pornography Guideline as one frequently leading to "unreasonable results," *id.* at 188, because the application of its enhancements "routinely result[s] in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases," *id*. at 186. Clarke thus asserts that the district court committed procedural error in applying the child pornography enhancements provided by the Guidelines. This argument misunderstands the "teaching of *Dorvee*." In *Dorvee*, we did not impose a heightened standard for the application of § 2G2.2 enhancements in individual cases. Rather, we were

concerned with the *substantive* reasonableness of even those sentences that resulted from adherence to the prescribed Guidelines range. Indeed, in *Dorvee* itself, we determined that the sentencing court had properly applied the § 2G2.2 enhancements, concluding that the court committed procedural error only in its separate error of failing to recognize that a statutory maximum limited the applicable Guidelines range. *Id.* at 180–81.

Here, the district court concluded that the prescribed Guidelines calculation led to excessive results. *See* App'x at 498 ("The guideline range is excessive and I'm not going to use it."). In doing so, the district court explicitly considered *Dorvee*. The court explained that "in the four or five cases following *Dorvee*, the[] [Second Circuit] ha[s] kept these guidelines and reduced the sentences." *Id*. The district court then discussed Clarke's background and personal characteristics, as well as the nature of his crimes, in accurately calculating the applicable Guidelines range, but thereafter departing downward from it.

Clarke further asserts that the district court committed procedural error by "repeated[ly] emphasi[zing] that it thought Mr. Clarke's conduct was of the 'worst kind,' when it was actually typical of an ordinary first-time child

38

pornography case." Def.'s Br. at 41. In fact, the court described the child pornography *content*, not the defendant's conduct, as "of the worst kind." App'x at 493, 497. This was a justifiable conclusion: included in Clarke's extensive collection of child pornography were sadistic videos of children being abused. Moreover, in its consideration of the § 3553(a) factors, the district court recognized that Clarke had never manufactured child pornography or had physical contact with children, and that he has no criminal record. On this record, we see no basis to conclude that the sentence was procedurally unreasonable.

Next, Clarke contends that his sentence was substantively unreasonable because it failed to take into account Clarke's history and characteristics and was greater than necessary to meet the purposes of sentencing as set forth in § 3553. This argument likewise fails. The record refutes Clarke's contention that the district court failed to give thoughtful consideration to Clarke's history and characteristics, or to explain why the sentence was necessary for deterrence and/or punishment. To the contrary, the record instead demonstrates that the district court considered and applied the § 3553(a) factors and took into account Clarke's job as a corrections officer and his lack

of criminal history.[13] The sentence imposed—of 120 months in custody—was 90 months below the bottom end of the Guidelines range. This sentence stands in marked contrast to the sentences of 240 months and 225 months, respectively, which we vacated as substantively unreasonable in *Dorvee* and *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017).[14] We see no basis to conclude that Clarke's sentence is substantively unreasonable.

b. *Monetary Penalties*

In addition to his prison term, Clarke was further ordered to pay a fine of $13,682, representing the costs incurred because Clarke failed to show up

---

[13] Specifically, the district court noted that Clarke: (1) possessed "28,715 images and 77 videos of child pornography, of the worst kind"; (2) "has some good things in his life," including "no criminal history" and never having been "in trouble before" and "he has been a corrections officer"; (3) may have "ruined" the lives of "[l]ittle children"; (4) "never manufactured" child pornography, but created a market for it; and (5) never accepted responsibility for the offense. App'x at 491–508.

[14] Comparison to other sentences is also instructive. In *United States v. Butler*, we affirmed an 87-month sentence on a defendant who was convicted only of receipt and possession of child pornography (and not of distribution or transportation); the defendant furthermore had engaged in that misconduct for only a year. 733 F. App'x 565, 566–67 (2d Cir. 2018) (summary order). And in *United States v. Gill*, we affirmed a 121-month sentence for receipt of child pornography using a peer-to-peer program. 739 F. App'x 75, 76–77 (2d Cir. 2018) (summary order). Clarke's circumstances are not of the "exceptional" sort that justifies our substitution of our own judgment for that of the district court. *See United States v. Ingram*, 721 F.3d 35, 37 (2d Cir. 2013) (per curiam).

for the first day of trial due to a purported medical need. The court also directed that Clarke pay a $5600 assessment, constituting of a mandatory $5000 penalty "on any non-indigent person or entity" under the Justice for Victims of Trafficking Act, *see* 18 U.S.C. § 3014, and an $100 special assessment on the remaining six counts. Clarke challenges these monetary sanctions on the grounds that Clarke is indigent, as indicated by the appointment of the federal defenders to represent him.

We have observed that, "[i]f the defendant is indigent, a fine should not be imposed absent evidence in the record that he will have the earning capacity to pay the fine after release from prison." *United States v. Rivera*, 971 F.2d 876, 895 (2d Cir. 1992). When making an indigency determination, a district court "may consider both defendant's present financial resources and those that may become available in the future." *United States v. Salameh*, 261 F.3d 271, 276 (2d Cir. 2001).

The record here reflects that Clarke: (1) receives $1,100 each month in pension payments (payments that will continue even while he is in prison); (2) owns at least one home; and (3) can expect social security payments to resume upon his release from custody. While not explaining why it found

41

Clarke to be nonindigent despite his representation by the Federal Defenders, the court promised "to have a separate hearing on that, if necessary." App'x at 462; *see also* App'x at 465 (stating again that, if Clarke wanted "a hearing on that [indigency] issue," the district court would grant one post-sentence). There is no indication that Clarke sought such a hearing, nor that he requested amendment of the judgment. Accordingly, we will not disturb the monetary aspect of Clarke's sentence.

## CONCLUSION

For the foregoing reasons, we AFFIRM Clarke's conviction and sentence.