*United States v. Rivera*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURTS LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of July, two thousand twenty two.

PRESENT:  RICHARD C. WESLEY,
           RICHARD J. SULLIVAN,
           STEVEN J. MENASHI,
              *Circuit Judges.*

-------------------------------------------------------------------

UNITED STATES OF AMERICA,

        *Appellee,*

    v.                           No. 17-59

MICHAEL GARRETT, AKA RAB,

        *Defendant,*

PAUL RIVERA, AKA PAUL ZANCE,
AKA PAULEE ZANCE, AKA PAULIE RIVERA,
AKA EDGAR RIVERA, AKA ZANCE RIVERA,

AKA STEVEN RIVERA,

*Defendant-Appellant.*

------------------------------------------------------------------

FOR APPELLANT: GWEN M. SCHOENFELD, Law Office of Gwen M. Schoenfeld, LLC, New York, NY, *for Defendant-Appellant*.

FOR APPELLEE: ALIXANDRA E. SMITH, Assistant United States Attorney (David C. James, Michael P. Robotti, Assistant United States Attorneys, *on the brief*), *for* Breon S. Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

Appeal from judgment of the United States District Court for the Eastern District of New York (Kiyo A. Matsumoto, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Paul Rivera appeals from his judgment of conviction following a jury trial in the United States District Court for the Eastern District of New York (Matsumoto, *J.*). Rivera was found guilty on fourteen counts, including racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963; murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); drug-related offenses, in

2

violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(i), (b)(1)(A)(iii), (b)(1)(C), and (b)(1)(D); gun-related offenses, in violation of 18 U.S.C. § 924(c) and (j)(1); interstate prostitution, in violation of 18 U.S.C. § 2422(a); and sex trafficking and sex trafficking of children, in violation of 18 U.S.C. § 1591(a)(1), (a)(2), (b)(1), and (b)(2).

On appeal, Rivera argues that the district court erred by (1) denying his motion to suppress drugs recovered during a traffic stop, (2) allowing the government to introduce videos showing Rivera engaged in sexual conduct with a minor, and (3) denying his post-trial motion for a judgment of acquittal on the sex trafficking of minors offense.[1]  We assume the parties' familiarity with the underlying facts, the record of prior proceedings, and the arguments on appeal.

## I.  STANDARD OF REVIEW

In reviewing a denial of a motion to suppress, we review findings of fact for clear error, and conclusions of law and mixed questions of law and fact de novo. *See United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020).  In reviewing a trial court's evidentiary rulings, we employ "a deferential abuse of discretion

---

[1] Rivera also argues that the district court erred by permitting him to represent himself at trial without first conducting a psychiatric evaluation.  We address that challenge in a separate opinion that accompanies this summary order.

3

standard," which upholds a district court's admission or exclusion of evidence unless it was "manifestly erroneous." *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018) (citation omitted). We review de novo the district court's denial of a motion challenging the sufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 29, *see United States v. Harvey*, 746 F.3d 87, 89 (2d Cir. 2014), and must decide whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

## II. DISCUSSION

### A. Denial of Defendant's Motion to Suppress

Rivera first argues that the district court erroneously denied his pre-trial motion to suppress drugs recovered from his car during a January 2012 traffic stop in Pennsylvania. While Rivera does not dispute the legality of the initial traffic stop, he argues that the officers violated the Fourth Amendment by failing to "diligently pursue their investigation" after developing reasonable suspicion of drug-related criminal activity. Rivera Br. at 68–70. We disagree.

4

The Fourth Amendment protects against unreasonable searches and seizures and applies to "automobile stop[s]." *Whren v. United States*, 517 U.S. 806, 810 (1996). "[I]f an officer develops a reasonable suspicion of [additional] criminal activity" during a valid traffic stop, it is reasonable to extend the duration of the stop "for investigatory purposes." *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015). Under such circumstances, law enforcement officers must "diligently pursue[] a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it [is] necessary to detain the defendant." *Id.* at 526 (citation omitted). At the same time, should the investigation yield additional facts that "enhance[] suspicions" of criminal conduct, "brief continued detention" does not exceed the Fourth Amendment's permissible scope. *United States v. Bailey*, 743 F.3d 322, 337 (2d Cir. 2014).

The agents here diligently pursued their investigation of Rivera's criminal conduct. After pulling Rivera's vehicle over for a traffic violation, State Trooper Thomas Horan noticed the smell of marijuana emanating from the vehicle and observed that the car's occupants seemed "extremely nervous." Sp. App'x at 13. Horan returned to his vehicle, called for backup, and ran several background checks on the occupants and vehicle – a process that took about ten to fifteen

5

minutes – which revealed that Rivera and another occupant had lied about their criminal histories. When the backup officer arrived (about fifteen minutes later), he confirmed Horan's initial observations, and the two troopers noted additional discrepancies in the occupants' responses to questions. Within a few minutes of the backup officer's arrival, Horan called the canine unit. Though Rivera faults Horan for not calling the canine unit almost immediately, Horan took reasonable steps – including verifying Rivera's criminal background, asking the car's occupants follow-up questions, and awaiting another trooper's opinion – that were designed "to confirm or dispel" his suspicions. Under these circumstances, it cannot be said that the delay of thirty to thirty-five minutes between the initial stop and calling the canine unit was unreasonable. *See Bailey*, 743 F.3d at 337, 346.

The Supreme Court's decision in *United States v. Place*, 462 U.S. 696 (1983), is not to the contrary. There, although law enforcement officers developed reasonable suspicion before the defendant boarded his plane in Miami, the agents failed to arrange for a canine sniff until after the defendant landed in New York. *See id.* at 698–99. In light of the "ample time" available to the agents to "arrange for their additional investigation," *id.* at 709, the Supreme Court concluded that

the agents did not diligently pursue their investigation when they seized the defendant's luggage for ninety minutes, *see id.* at 709–10.

In contrast to *Place*, the agents here stopped Rivera for a legitimate traffic violation, and only over the course of the stop did their observations and investigation give rise to reasonable suspicion of a narcotics crime. Nothing in the sequence of events suggests that the agents unreasonably dragged their feet during their investigation. Accordingly, we find the district court did not err in denying Rivera's motion to suppress the narcotics recovered from the traffic stop.

## B. Admission of Sexually Explicit Videos

Rivera also contends that the district court erred by admitting four videos depicting Rivera engaged in sexually explicit conduct with a minor named J.O.[2] We need not resolve the question of whether the videos were unfairly prejudicial because the admission of the videos, "if error at all, was harmless." *United States v. Ivezaj*, 568 F.3d 88, 98 (2d Cir. 2009). Given the other evidence in the record tending to prove Rivera's guilt, we may conclude "with fair assurance" that "the judgment was not substantially swayed" by the admission of the videos. *United*

---

[2] Out of respect for their privacy, we refer to Rivera's sex trafficking victims by their initials.

7

*States v. Al-Moayad*, 545 F.3d 139, 170 (2d Cir. 2008) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

Even without the videos, the evidence showed that Rivera knowingly engaged in sex trafficking and prostitution. The jury heard from the sex trafficking victims, who described how Rivera exploited them. The jury also heard testimony that described how members of Rivera's organization used threats of violence to intimidate minors into performing sex acts. The victims' testimony was corroborated by photographs and text messages found on Rivera's cellphone as well as advertisements for prostitution featuring photographs of the victims on illicit websites. Rivera also admitted to sexual exploitation by stipulation.

Rivera argues that "there is no chance that a jury would fairly review evidence of any sex crime" after watching the videos. Rivera Br. 82. Yet the evidence against Rivera was so overwhelming that a rational jury, even without watching the videos, would have convicted him. We therefore decline to disturb the district court's judgment based on Rivera's objections to the admission of the videos.

## C. Sufficiency of the Evidence of Interstate Commerce

Finally, Rivera argues that there was insufficient evidence to establish that he trafficked minors in interstate commerce as required under 18 U.S.C. § 1591.[3] Again, we disagree.

A defendant is guilty of sex trafficking children if he knowingly,

(1) in or affecting interstate commerce, "transports" a person (among other actions); or

(2) "benefits . . . from participation in a venture which has engaged in an act" that violates paragraph (1),

all while knowing "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). While this Court has not specifically interpreted the interstate commerce element under section 1591, we have interpreted other statutes with similar jurisdictional elements and concluded that only a de minimis effect on interstate commerce is required. *See United States v. Celaj*, 649 F.3d 162, 168 (2d Cir. 2011) (noting "it is well established that the burden of proving a nexus to interstate commerce is minimal") (citation omitted). We have also found that the use of cell phones and the internet are

---

[3] While the government urges that we affirm based on the so-called concurrent sentence doctrine, this Court has stated that *Ray v. United States*, 481 U.S. 736 (1987), "is understood to have abolished the concurrent sentence doctrine for direct review of federal convictions." *Dhinsa v. Krueger*, 917 F.3d 70, 76 n.4 (2d Cir. 2019) (internal citation and alterations omitted)).

enough to establish an effect on interstate commerce. *See United States v. Giordano*, 442 F.3d 30, 39 (2d Cir. 2006) (labeling it an "unremarkable conclusion that the national telephone network" satisfies the interstate commerce element); *see also United States v. Clarke*, 979 F.3d 82, 93 n.6 (2d Cir. 2020) ("The interstate commerce element of the statute [18 U.S.C. § 2252(a)(1)] is satisfied by the use of the internet to transmit the files.").

In denying Rivera's Rule 29 motion, the district court found sufficient evidence of interstate commerce because Rivera used a cell phone to plan victim-witness K.R.'s prostitution, took photographs of victim-witness S.R. that were later posted as advertisements on Backpage.com – a website used to further the organization's prostitution efforts – and drove the victims to hotels and motels for rendezvous with johns. Rivera nevertheless argues that this evidence did not establish that his sex trafficking activity involved minors because S.R. was eighteen when the photos that Rivera had taken of her were posted on Backpage.com, she was nineteen when she received her first phone, and no victim explicitly testified that Rivera drove the victims to hotels when they were minors.

But Rivera ignores the statements of S.R. and J.O., who both testified that they were minors when they first engaged in commercial sex at Rivera's direction.

10

Indeed, S.R. specifically testified that she was a minor when she began prostituting for Rivera; that she had sex in exchange for money (which she then gave to Rivera); that "a couple of months" after meeting Rivera, he took pictures of her in his kitchen; and that she attended a party where she had sex with another attendee at Rivera's direction. *See* App'x at 2471–73, 2561. S.R. also testified that she worked as a prostitute for Rivera and his co-defendant Garrett "[b]asically the whole time [she] was with them," which began when she was fifteen years old. She further stated that Rivera drove her to "outcalls," or prostitution dates, at numerous locations including hotels. App'x at 2591; *see United States v. Evans*, 476 F. 3d 1176, 1179–1180 (11th Cir. 2007)) (explaining that a defendant's "use of hotels that served interstate travelers" satisfied interstate commerce element).

Considered as a whole, the evidence amply demonstrated that Rivera enlisted minors for his prostitution ring without regard for his victims' minor status, and there is nothing in the trial record to suggest that Rivera decided to use cell phones or arrange hotel "outcalls" only after the victims turned eighteen. Therefore, the jury could have rationally inferred that the trial testimony regarding the victims' prostitution as minors, combined with the evidence demonstrating

11

interstate commerce, satisfied the interstate commerce element of the sex trafficking of minors offense.

* * *

We have considered Rivera's remaining arguments and conclude that they are without merit. For the foregoing reasons and the reasons stated in the accompanying opinion filed simultaneously with this summary order, the judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court